---

CHARLES J. OFF & CO., Appellant, *vs.* DELLA I. MOREHEAD, Appellee.

*Opinion filed June 18, 1908.*

1. CONSTITUTIONAL LAW—*"due process of law" defined.* "Due process of law" is synonymous with "law of the land," and means a general public law, binding upon all members of the community under all circumstances, and not partial or private laws, affecting differently the rights of individuals or classes in the same situation.

2. SAME—*statute arbitrarily selecting class of persons and subjecting them to special burdens is invalid.* A statute which arbitrarily selects a class of individuals and subjects them to peculiar rules or imposes upon them special burdens and obligations from which other people similarly situated are exempt deprives the persons affected of both liberty and property, and is forbidden by the constitution.

3. SAME—*Bulk Sales act of 1905 is void.* The Bulk Sales act of 1905 (Laws of 1905, p. 284,) is unconstitutional and is void in its entirety, since it imposes special burdens upon the vendor and purchaser of stocks of merchandise from which persons dealing in other classes of property are exempt, and deprives them of the privilege of contracting, which is both a liberty and property right.

APPEAL from the County Court of Logan county; the Hon. DONALD MCCORMICK, Judge, presiding.

This is an action in assumpsit and attachment brought by Charles J. Off & Co. against Della I. Morehead. A writ of attachment was issued upon an affidavit alleging that the defendant had within two years fraudulently conveyed and disposed of her property so as to hinder and delay her creditors, contrary to the provisions of an act entitled "An act

to prevent sales of merchandise in fraud of creditors," approved May 13, 1905, and in force July 1, 1905. This attachment writ was levied upon a stock of groceries which had formerly belonged to the defendant. To the declaration in assumpsit, which consisted of the common counts, a plea of the general issue was interposed. The affidavit for attachment was traversed and issue joined on the traverse. After the seizure of the stock of merchandise by virtue of a writ of attachment, Wilbur Gehres, by leave of court, interpleaded, and by his interplea averred that the said stock of merchandise attached and seized by virtue of the writ of attachment was at the time it was so attached and seized, and still was, the property of him, the said Wilbur Gehres, and not the property of the said Della I. Morehead. To the interplea Off filed a replication denying that the property seized was the property of the interpleader and averring the same to be the property of Della I. Morehead. This replication concluded to the country and upon it issue was joined. A jury was waived by the parties as to the issues on the declaration in assumpsit and the issues on the affidavit in attachment, and these issues were tried by the court. A jury was empaneled to try the issue on the interplea. Upon the hearing of that issue the jury found a verdict in favor of the interpleader. The court found for the plaintiff in the action of assumpsit and assessed his damages at $288.81. Upon the issue as to the attachment the finding of the court was for the defendant. A judgment having been rendered upon the verdict of the jury finding Wilbur Gehres to be the owner of the stock of merchandise, the plaintiff in the attachment suit and defendant in the interplea duly excepted, and has perfected his appeal direct to this court on the ground that the constitutionality of the act of May 13, 1905, known as the "Bulk Sales law," is involved.

The statute the constitutionality of which is involved in this case is as follows:

"Sec. 1. That a sale of any portion of a stock of merchandise, otherwise than in the ordinary course of trade or in the regular and usual prosecution of the seller's business or a sale of an entire stock of merchandise in gross, will be presumed to be fraudulent and void as against the creditors of the seller unless the seller and purchaser shall at least five days before the sale make a full and detailed inventory showing the quantity, and so far as possible, with the exercise of reasonable diligence, the cost price to the seller of each article to be included in the sale, and unless such purchaser shall at least five days before the sale, in good faith, make full and explicit inquiries of the seller as to the names and places of residences or places of business of each and all of the creditors of the seller and the amount owing each creditor and unless the purchaser shall at least five days before the sale, in good faith, notify or cause to be notified, personally or by registered mail, each of the seller's creditors of whom the purchaser has knowledge or can, with the exercise of reasonable diligence, acquire knowledge, of said proposed sale and of the said cost price of the merchandise to be sold and of the price proposed to be paid therefor by the purchaser. The seller shall at least five days before such sale fully and truthfully answer in writing each and all said inquiries.

"Sec. 2. Except as especially provided in this act, nothing therein contained nor any act thereunder, shall change or affect the present rules of evidence or the present presumptions of law."

The court below held the above statute unconstitutional and refused to allow the appellant to prove that the sale in question had been made without complying with the provisions of said act.

The facts in this case are not in dispute. Della I. Morehead borrowed $500 from the First National Bank of Lincoln, Illinois, with which she bought a small stock of groceries and engaged in the retail grocery business. She

became indebted to Off & Co., of Peoria, for merchandise, to the amount of $288.81. Her business appears to have been unsuccessful. She sold her entire stock of goods to Wilbur Gehres. An invoice of the stock was taken, and it was found that the stock was worth, at cost prices, $296. Gehres paid her for the stock $260. A horse and delivery wagon valued at $100 were included in the sale, bringing the total sale price up to $360. Gehres paid for the property by a check. Appellee applied the whole amount of the check on her note of $500 to the bank. Appellee testifies that she found her business was unprofitable and that she desired to apply the proceeds of the merchandise on her debts, as far as the same would go. Appellee had mortgaged her homestead for the $500 which she borrowed of the bank.

There is no contention that the sale of the stock of merchandise was fraudulent in fact. Appellant's sole contention is that the sale was made in violation of the Bulk Sales law, above set out, and for that reason it must be held fraudulent and void as to the creditors of appellee.

WINSLOW EVANS, and GEORGE J. JOCHEM, for appellant.

A. D. CADWALLADER, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The constitutionality of this statute is challenged on the ground that it is in conflict with sections 1 and 2 of the bill of rights. These sections are as follows:

"Sec. 1. All men are by nature free and independent, and have certain inherent and inalienable rights—among these are life, liberty, and the pursuit of happiness. To secure these rights and the protection of property, governments are instituted among men, deriving their just powers from the consent of the governed.

"Sec. 2. No person shall be deprived of life, liberty or property, without due process of law."

The statute in question singles out a particular class of persons and imposes burdens upon them from which all other classes are exempt. The persons thus affected are deprived of both liberty and property, in that they are not permitted to contract in respect to a particular kind of property subject to the same laws that are applicable to all other classes of property. The privilege of contracting is both a liberty and a property right, and a law which deprives a man or a class of the right to acquire and enjoy property upon the same terms and in the same manner permitted to the community at large is in violation of the constitutional rights of the persons affected by such law. Cooley's Const. Lim. (1st ed.) 393; *Frorer* v. *People,* 141 Ill. 171.

"Due process of law" is synonymous with "law of the land," and it means a general public law, binding upon all members of the community under all circumstances, and not partial or private laws affecting the rights of private individuals or classes of individuals. *Millett* v. *People,* 117 Ill. 294; *Frorer* v. *People, supra.*

The legislature undoubtedly has the constitutional power to enact laws which, by reason of peculiar circumstances, may affect some persons or classes of persons only, but in such instances the class of persons upon whom the law is to operate must possess some common disability, attribute or qualification, or must occupy some condition marking them as proper objects for the operation of special or class legislation. *Gillespie* v. *People,* 188 Ill. 176; *Harding* v. *People,* 160 id. 459; *Ruhstrat* v. *People,* 185 id. 133; *Starne* v. *People,* 222 id. 189.

The general principle running through all the cases is, that a statute which arbitrarily selects a class of individuals and subjects them to peculiar rules or imposes upon them special obligations or burdens from which other persons are exempt is unconstitutional. In the language of Judge Cooley, in his work on Constitutional Limitations, (6th ed. 481-483): "Everyone has a right to demand that he be

governed by general rules, and a special statute which without his consent singles his case out as one to be regulated by a different law from that which is applied in all similar cases would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments."

*Meadowcroft* v. *People*, 163 Ill. 56, was a prosecution under the act for the protection of bank depositors, which provided, among other things, that the "failure, suspension or involuntary liquidation of the banker, broker, banking company or incorporated bank within thirty days from and after the time of receiving such deposit shall be *prima facie* evidence of an intent to defraud, on the part of such banker, broker or officer of such banking company or incorporated bank." In that case the constitutionality of the statute was assailed on the ground that it was special legislation, in that it established a rule of evidence applicable only to a particular class of persons. That contention was answered by this court, speaking by Mr. Justice Baker, by pointing out that the business of banking is not *juris privati*, but is, like that of an inn-keeper or common carrier, affected with the public interest and therefore subject to public regulation, and the law was sustained on the ground that there was manifest reason and necessity for protecting the community in their dealings with persons engaged in the banking business that do not exist with respect to their transactions with those employed in "the ordinary agricultural, manufacturing, merchandising and mining pursuits."

The only persons affected by this statute are persons who own "stocks of merchandise," and persons who may purchase a portion of such stock of merchandise in some manner other than in the ordinary course of business, or the entire stock of merchandise in gross. The words "stock of merchandise," in this statute, are used in the common and ordinary acceptation of those terms, and mean the goods or chattels which a merchant holds for sale, and are equiva-

lent to "stock in trade" as ordinarily used and understood among merchants and tradesmen. The title of this act indicates its purpose to be the prevention of sales of merchandise in fraud of creditors. It cannot be seriously contended that a creditor of a merchant occupies a position of such peculiar public concern that the passage of this act can be justified because of the inability of creditors of merchants to take care of themselves upon an equal footing with creditors of persons engaged in other lines of business. There is, furthermore, no reason pointed out, and none suggests itself to us, why sales of stocks of merchandise should be placed under the protection of a special statute imposing onerous restrictions and conditions upon both seller and buyer from which persons dealing in all other classes of property are exempt. This law has no application to a sale by a manufacturer of all his machinery, tools, finished articles and raw material; or by a farmer of all his live stock, farm implements, crops grown or growing, and household goods; or by a hotel keeper of his entire business and all the property therein; or by a livery or transfer company of all its rolling stock, harness and horses owned and used in the business; or by a publisher of all his presses and printing machinery and appliances; or by a mine owner of all the property owned and used in the mining business; or to a sale by a miller who may sell his business, mill machinery and the grain and its products on hand. On behalf of these and all others the law indulges the presumption of honesty and fair intentions in making sales, either in or out of the ordinary course of business, with or without an inventory, and in bulk or by parts and parcels. If sales made of the various classes of property above referred to are presumed to be fair and honest, it is difficult to see why a sale of a stock of merchandise under similar conditions should be persumed to be fraudulent and void. There is no such actual, substantial difference between the members of the class of individuals upon whom this statute is in-

tended to operate and the owners of other kinds of property as to warrant the legislature in passing an act applicable only to persons dealing in stocks of merchandise. The act in question is therefore special class legislation, which is prohibited by the constitution of 1870.

Statutes bearing more or less similarity to the one now under consideration have been enacted in a number of other States. The validity of these statutes appears to have been questioned in the courts of last resort in eight States and one territory. These courts have reached widely different results. Thus, in *Squire & Co.* v. *Tellier,* 185 Mass. 18, (69 N.. E. Rep. 312,) *Walp* v. *Mooar,* 76 Conn. 515, (57 Atl. Rep. 277,) *Neas* v. *Borches,* 109 Tenn. 398, (71 S. W. Rep. 50,) *McDaniel* v. *Connelly Shoe Co.* 30 Wash. 549, (60 L. R. A. 947,) and *Williams* v. *Fourth Nat. Bank,* 15 Okla. 477, (6 A. & E. Ann. Cas. 970,) statutes of the same general character as the one here involved have been held constitutional; while in *Block* v. *Schwartz,* 27 Utah, 387, (65 L. R. A. 308,) *McKinster* v. *Sager,* 163 Ind. 671, (68 id. 273,) *Miller* v. *Crawford,* 70 Ohio, 207, (71 N. E. Rep. 631,) and *Wright* v. *Hart,* 182 N. Y. 330, (75 id. 404,) the opposite conclusion was reached and the statutes declared unconstitutional. We do not regard the question involved here as one to be determined upon the weight of authority outside of this State. We have so often expressed our views in regard to the clause of our constitution now under consideration, that its interpretation is settled by the previous decisions of this court too firmly to be departed from out of regard for opposing views in other States, however highly we may esteem them. Without regard to the question of the weight to be given to the conflicting decisions of other courts upon the question now in hand, we think the reasoning of those courts which have held such statutes unconstitutional on the ground upon which we rest our judgment in this case are more in harmony with the views of this court as expressed in the numerous cases, than

are the reasons which are given by those other courts in which a different result has been reached.

Our conclusion is that the act in question is void in its entirety. It follows, therefore, that the court below committed no error in refusing the evidence offered to prove that the sale in question was not made in accordance with its provisions.

The judgment of the county court of Logan county will be affirmed.

*Judgment affirmed.*