THE G. S. JOHNSON COMPANY, Appellant, *vs.* ROSSIE BELOOSKY, Appellee.

*Opinion filed April 23, 1914—Rehearing denied June 3, 1914.*

CONSTITUTIONAL LAW—*Bulk Sales act of 1913 is constitutional.* The Bulk Sales act of 1913 (Laws of 1913, p. 258,) is not limited to sales of stocks of merchandise but applies to all sales of goods and chattels in the manner prohibited by section 1 of the act except as to the cases specifically exempted by section 3, and such law is a proper exercise of the police power of the State to prevent fraud, and is valid.

APPEAL from the County Court of Rock Island county; the Hon. BENJAMIN S. BELL, Judge, presiding.

ALBERT HUBER, and BLUM, WOLFSOHN & BLUM, (HENRY S. BLUM, of counsel,) for appellant.

McENIRY & McENIRY, (M. J. McENIRY, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Ernest Pilatt was engaged in the bakery business and used in connection therewith a delivery wagon and a team of horses. He made a bill of sale covering his entire stock in trade, store fixtures and the wagon and team used in connection with the business, to Rossie Beloosky. Subsequently the G. S. Johnson Company, being a creditor of Pilatt, levied an attachment upon the goods and chattels sold to appellee, basing the attachment upon the failure to comply with an act of the legislature known as the Bulk Sales act of 1913. It is admitted that no attempt was made to comply with the act in making the sale. The sole question presented for our determination is the constitutionality of the Bulk Sales act of 1913. The court below held the act to be invalid and gave judgment for the de-

fendant. The plaintiff in the attachment proceeding has prosecuted an appeal direct to this court.

The Bulk Sales act passed in 1913 is entitled "An act to regulate the sale or transfer of goods, wares, merchandise, and other chattels in bulk and to provide certain penalties in connection therewith." The act, which is found at page 258 in the Laws of 1913, is as follows:

"Sec. 1. That the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudulent and void as against the creditors of the said vendor, unless the said vendee shall, in good faith, at least five (5) days before the consummation of such sale, transfer or assignment demand and receive from the vendor a written statement under oath of the vendor or a duly authorized agent of the vendor having knowledge of the facts, containing a full, accurate and complete list of the creditors of the vendor, their addresses and the amounts owing to each as near as may be ascertained, and if there be no creditors, a written statement under oath to that effect; and unless the said vendee shall at least five days before taking possession of said *goods and chattels* and at least five days before the payment or delivery of the purchase price, or consideration of any evidence of indebtedness therefor, in good faith, deliver or cause to be delivered or send or cause to be sent personally or by registered letter properly stamped, directed and addressed, a notice in writing to each of the creditors of the vendor named in the said statement or of whom the said vendee shall have knowledge, of the proposed purchase by him of the said *goods and chattels* and of the price, terms and conditions of such sale: *Provided, however,* that it shall be lawful for the vendee to pay to the vendor so much of the purchase price as shall be in excess of the total amount

of the indebtedness of the vendor, before the expiration of the five days herein above referred to.

"Sec. 2. Any vendor of all or the major portion of a stock of merchandise or merchandise and fixtures or other goods and chattels of the vendor's business, in bulk, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business or any person for 'or on behalf of such vendor who shall knowingly or willfully make or deliver or cause to be made or delivered any false statement or any statement which in any material portion is false or shall knowingly or willfully fail to include the names of all the creditors of said vendor in said statement, as provided for in section 1 of this act, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one thousand dollars ($1000) or by imprisonment for not more than one (1) year or both in the discretion of the court.

"Sec. 3. Vendors and vendees under this act shall include corporations, associations, co-partnerships and individuals, who shall be party to any sale, transfer or assignment, of goods and chattels in bulk. But nothing contained in this act shall apply to sales by executors, administrators, receivers, trustees in bankruptcy or by any public officer under judicial process nor to sales of exempt property or any sale or transfer made in the ordinary course of trade and in the regular and usual prosecution of the vendor's business nor to sales made in good faith at public auction, where notice of such sale is given in a newspaper of general circulation within the county where such sale is made, at least ten days before such sale or by posting of notices in at least five public places at least ten days before said sale."

The above act was manifestly passed by the legislature with the intention of obviating the constitutional objections that were pointed out by this court to the Bulk Sales law of 1905. The former act was held unconstitutional by this

court in *Off & Co.* v. *Morehead*, 235 Ill. 40. The decision in the *Off & Co. case* was re-affirmed in *Pogue* v. *Rowe*, 236 Ill. 157. The act under consideration in those cases was expressly limited to the "sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade or in the regular and usual prosecution of the seller's business." This court held that the words "stock of merchandise," as used in the statute of 1905, were equivalent to "stock in trade," and that the statute was limited to stocks of goods such as were ordinarily kept for sale by merchants and tradesmen. The title of the old act indicated that the only purpose sought to be accomplished was the prevention of sales of stocks of merchandise in fraud of creditors. It was pointed out in our former opinion that the statute of 1905 had no application to a sale by a manufacturer of all of his machinery, tools, finished articles and raw material; or by a farmer of all his live stock, farm implements, crops (grown or growing) and household goods; or by a hotel keeper of his entire business and all the property therein; or by a livery or transfer company of all its rolling stock, harness and horses owned and used in the business; or by a publisher of all his presses, printing machinery and appliances; or by a mine owner of all the property owned and used in the mining business; or to a sale by a miller who may sell his business, mill machinery and the grain and its products on hand. Attention was called to the fact that as to these and all other sales, except of "stocks of merchandise," the law indulges the presumption of honesty and fair intention in making sales, either in or out of the ordinary course of business, with or without an inventory, and in bulk or by parts and parcels. The conclusion was reached that there was no common disability, attribute or qualification connected with a stock of merchandise, or in respect to the persons dealing in the same, which would warrant the legislature in mark-

ing the same for special protective legislation from which all other classes of persons and property were excluded.

It will be seen by reference to section 1 of the later act that it includes within its terms the "sale, transfer, or assignment * * * of a stock of merchandise, or merchandise and fixtures or *other goods and chattels of the vendor's business,*" and thereafter in said section the property the sale of which is affected by said act is referred to as "said goods and chattels." In section 2 of the new act the same language is used in reference to the property the sale, transfer or assignment of which is affected by the act. The third section excludes from the act certain classes of sales, such as sales by executors, administrators and public officers and the sale of exempt property. Certain sales are taken out of the operation of the statute by section 3 without reference to the character of the property involved. It must be assumed that the legislature, in passing the new act, had before it the decision of this court holding the former act unconstitutional because it was special class legislation, and that it was the intention of the General Assembly, in passing the later act, to obviate this objection by passing a general act applicable indiscriminately to the sale of any goods and chattels in the manner inhibited by section 1 of said act. Construing the new act as a general law which prohibits the sale of any goods and chattels in bulk, otherwise than in the ordinary course of trade in the regular and usual prosecution of business, the objection to which the former statute was open is obviated. The legislature may, under the police power, pass such laws as it deems necessary for the suppression of fraud. The reasonableness of the act and the necessity for its enactment are legislative questions, with which the courts have no concern. Statutes of the same general character as the one here involved have frequently been before the courts of the different States and they have been sustained by the

decided weight of authority. We do not deem it necessary to cite these cases. Many of them will be found cited in a note to *Off & Co.* v. *Morehead,* in volume 14 of American and English Annotated Cases, 434.

The court below erred in holding the act of May 3, 1913, unconstitutional.

The judgment of the county court of Rock Island county is reversed and the cause remanded.

*Reversed and remanded.*