106     APPELLATE COURTS OF ILLINOIS.

H. S. Richardson Coal Co.˙ v. Cermak et al., 190 Ill. App. 106.

------

## H. S. Richardson Coal Company, Plaintiff in Error, v. Anton J. Cermak and William Hereley Company, Defendants in Error.

### Gen. No. 20,021.

1. FRAUDULENT CONVEYANCES, § 15*—*scope of Bulk Sales Act.* The Bulk Sales Act (Hurd's R. S. 1913, ch. 38a, ¶¶ 4, 5,) relates to a business or trade where, in the ordinary course and regular prosecution thereof, the goods or chattels are not ordinarily and regularly sold by the owner in bulk.

2. FRAUDULENT CONVEYANCES, § 15*—*scope of Bulk Sales Act.* The Bulk Sales Act (Hurd's R. S. 1913, ch. 38a, ¶¶ 4, 5,) is *held* not to apply to a sale of a team of horses, including harness and wagon,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

used personally by the vendor in hauling coal for others at a compensation of so much per ton.

3. FRAUDULENT CONVEYANCES, § 15*—*property not affected by Bulk Sales Act.* The Bulk Sales Act (Hurd's R. S. 1913, ch. 38a, ¶¶ 4, 5) does not contemplate that one called upon to render personal services cannot sell chattels, goods or things appurtenant thereto unless its conditions are complied with.

4. FRAUDULENT CONVEYANCES, § 15*—*property excluded from operation of Bulk Sales Act.* Where the vendee of a team of horses and harness and wagon replevined them when levied upon as the property of the vendor, the sale of such property was not void for want of the statement and notices as required by Hurd's R. S. 1913, ch. 38a, ¶¶ 4, 5.

Error to the Municipal Court of Chicago; the Hon. JOHN K. PRINDIVILLE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed. Opinion filed December 22, 1914, Rehearing denied January 5, 1915.

HENRY D. COGHLAN, for plaintiff in error.

LEVISOHN & LEVISOHN, for defendants in error.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

The only question presented on the record is one of law, whether what is known as the Bulk Sales Act of 1913 (Hurd's R. S. 1913, p. 906, ch. 38a, ¶¶ 4, 5,) applies to a sale of a double team of horses, including harness and wagon, which the vendor had been personally using to haul coal for others at a compensation of so much per ton.

The case was a replevin suit, tried before the court without a jury, and the court refused to hold as law a proposition submitted by plaintiff to the effect that said act does not apply to such a sale or transfer, and gave judgment for defendant. We think the court erred.

The act renders fraudulent and void as against the creditors of a vendor, unless the vendee complies with certain conditions therein named, "the sale, transfer

or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business'' and was construed in *G. S. Johnson Co. v. Beloosky,* 263 Ill. 363, as prohibiting the sale of any goods and chattels in bulk otherwise than ''in the ordinary course of trade in the regular prosecution of business,'' and it must be presumed, we think, to relate to a business or trade where, in the ordinary course and regular prosecution thereof, the goods or chattels, whatever they might consist of, are not ordinarily and regularly sold by the owner in bulk.

But here the vendor was working for wages, and under the Act of June 21st, in force July 1, 1895, (Hurd's R. S. 1913, p. 1246) the services of his team may be included in a judgment for wages, where it is necessary to the performance of his labor. Manifestly the act did not contemplate that one called on to render personal services cannot sell the chattels, goods or things that are appurtenant thereto unless the conditions imposed by said act are complied with. Otherwise a lawyer could not sell his library, a surgeon his instruments, a broker his office furniture, or a carpenter his tools, without compliance with such conditions. If such were the proper interpretation of the act, we could hardly imagine a more burdensome restriction upon one's property rights.

The sale was not void for want of the statement and notices required by the act, but with delivery of possession passed title to the replevined property to plaintiff in error, the vendee, from whom it was taken by defendants in error on an execution levied against the property of the vendor. As plaintiff in error still retains possession of the property, the judgment below will be reversed and judgment will be entered here in its favor.

*Reversed.*