## Oscar Larson, Appellee, v. R. C. Judd, Appellant.
## Gen. No. 6,172.

1. FRAUDULENT CONVEYANCES, § 15*—*what are goods and chattels within Bulk Sales Act.* Cattle, horses and tools used by a dairyman selling milk at retail are goods and chattels within the meaning of the Bulk Sales Act [Cal. Ill. St. Supp. 1916, ¶ 10021(1) et seq.].

2. FRAUDULENT CONVEYANCES, § 15*—*what does not constitute sale of major part of goods and chattels.* A sale by a dairyman of horses, wagons, harness, etc., held not a sale of the major part of his goods and chattels within the meaning of the Bulk Sales Act [Cal. Ill. St. Supp. 1916, ¶ 10021(1) et seq.]

3. FRAUDULENT CONVEYANCES, § 15*—*when sale of chattels not in violation of Bulk Sales Act.* After a sale of the major part of a vendor's goods and chattels in violation of the Bulk Sales Act [Cal. Ill. St. Supp. 1916, ¶ 10021(1) et seq.], a sale of the major part of the remainder is not in violation of such act.

4. FRAUDULENT CONVEYANCES, § 15*—*when sale of chattels not within Bulk Sales Act.* Where a dairyman sold all his cattle, which were the major part of his goods and chattels, held that his business therewith terminated so that a sale of part of the remainder was not within the Bulk Sales Act [Cal. Ill. St. Supp. 1916, ¶ 10021(1) et seq.].

Appeal from the County Court of Kane county; the Hon. S. N. HOOVER, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 26, 1916.

RUSSELL & McNERNY and HARRY G. HEMPSTEAD, for appellant.

JAMES F. GALVIN and CHARLES H. DARLING, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

On March 3, 1915, R. C. Judd, the appellant, obtained a judgment by confession against one Robert Larson

*See *Illinois Notes Digest,* Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and caused an execution issued thereon to be levied on horses before that time sold and delivered by. the execution debtor to the appellee, Oscar Larson (not a relative of the vendor). There was a trial of right of property under the provisions of chapter 140a of our Revised Statutes (J. & A. ¶ 6814 *et seq.*) and a judgment in favor of the purchaser.

The vendor, Oscar Larson, had been engaged in the dairy business on a rented farm near Geneva, Illinois, selling milk at retail. His lease expired March 1, 1915. Prior to that date his property used in said business consisted of cattle, horses and farm implements. For the better understanding of the question presented here we divide it into three groups: (a) Twenty-one head of cattle, the major part of his property; (b) five horses, two wagons, two sets of double harness, one single harness, and a corn planter, worth $650; (c) sundry small articles, including household furniture worth $250. February 28th he sold the major part of his property (the cattle) to one Aiken, and delivered them on that or the succeeding day. On March 2nd he sold the articles enumerated in group "b" to the appellee for $650. The controlling question here is whether this sale to appellee was in violation of what is known as our Bulk Sales Act of 1913 (Hurd's St., ch. 38a, p. 906, Cal. Ill. St. Supp. 1916, ¶ 10021(1) *et seq.*), which provides: "That the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures, or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudulent and void as against the creditors of the said vendor," unless the provisions of that statute are complied with. There was no attempt here to comply with those provisions, therefore the question is whether the sale of item "b" of the property to appellee was a sale of the major part or the whole of the

goods and chattels of the vendor's business. We have no doubt that the act covered the business. The former Act of 1905 was held unconstitutional by the Supreme Court in *Charles J. Off & Co. v. Morehead,* 235 Ill. 40, because the property included in the act was only "stock of merchandise" which made it special protective legislation. The present act was held good in *G. S. Johnson Co. v. Beloosky,* 263 Ill. 363, and there said to apply to the "sale of any goods and chattels in bulk, otherwise than in the ordinary course of trade in the regular and usual prosecution of business." The Appellate Court of the First District in *Heslop v. Golden,* 189 Ill. App. 388, held that the present act does not cover the desks, chairs, filing cases, rugs, and other articles of office furniture owned and used by a man conducting an employment agency, because the vendor had no connection with or semblance to a mercantile establishment, and that the words in the act "other goods and chattels of the vendor's business" meant goods and chattels used in connection with the business of selling merchandise, commodities and other wares. The same court held in *H. S. Richardson Coal Co. v. Cermak,* 190 Ill. App. 106, that the act did not apply to the sale of a team of horses, including harness and wagon, which the vendor had been personally using to haul coal for others at a compensation of so much per ton, and said: "The act did not contemplate that one called on to render personal services cannot sell the chattels, goods or things that are appurtenant thereto unless the conditions imposed by said act are complied with. Otherwise a lawyer could not sell his library, a surgeon his instruments, a broker his office furniture, or a carpenter his tools, without compliance with such conditions." This construction of the statute is consistent with our conclusion that the cattle, horses and tools used by the vendor in his business were goods and chattels used in connection with his business of selling merchandise, commodities or other wares

(milk) and therefore within the provisions of the act. The goods and chattels of Robert Larson's business were the property first mentioned (Items "a," "b" and "c"), excluding household furniture and perhaps other items in group "c." The major part of those goods and chattels (the cattle) were sold to Aiken before the purchase by appellee of the horses and other items in group "b," therefore appellee did not buy the major part of the goods and chattels. There is no ground for connecting appellee in any way with the vendor's sale to Aiken of the major part of his property, therefore we are not called upon to say what might be the effect of the purchase by different vendees acting in concert of the whole or major part of such goods and chattels, no one vendee buying the major part thereof. If appellee had purchased the goods in item "c" before the sale to Aiken of the major part of the property, he would not have been within the prohibition of the statute because he would not have purchased the major part of the goods and chattels, and his purchase could not have been invalidated by some subsequent action of his vendor and some third person with which he had no connection.

We do not think the vendor's property left after the sale of the cows can be regarded as the goods and chattels of his business within the meaning of the statute, in determining what was the major part of his property that appellee was prohibited from buying except under the conditions imposed by the statute. But even if that view were adopted, the business of the vendor terminated before the purchase of item "b" of the property, therefore appellee was not purchasing goods and chattels used in the vendor's business.

In any reasonable view we take of the situation we are of the opinion that the purchase by appellee was not within the prohibition of the Bulk Sales Act, and therefore that the judgment should be affirmed.

*Affirmed.*