## F. J. Athon, Appellant, v. W. R. McAllister, Sheriff, Appellee.

1. FRAUDULENT CONVEYANCES, § 15*—*when transfer within Bulk Sales Act.* A transfer by a party of certain office furniture, horses, colts, wagons, trucks, drays, harness, farm machinery, hogs, pigs, growing corn and the like, used or produced either in the dray and transfer business or in the business of farming in which such party had been engaged, *held* to be within the Bulk Sales Act of 1913, Rev. St. ch. 121a, sec. 1 [Cal. Ill. St. Supp. 1916, ¶ 10021(1)].

2. EXECUTION, § 92*—*when levy may be made upon personalty.* A sheriff may levy an execution in his hands upon personal property after he has levied the same on real estate and before the real estate is sold under such levy.

Appeal from the Circuit Court of Edgar county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed April 16, 1917.

W. H. CLINTON and O'HAIR & RHOADS, for appellant.

EMERY ANDREWS, JAMES K. LAUHER and STEWART W. KINCAID, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

Appellee, as sheriff of Edgar county, levied on certain real estate and later on some personal property by virtue of an execution issued on a judgment against one Moreau Athon and S. L. Sheets and in favor of Philip Bibo.

Appellant replevied the personal property levied on, claiming that Moreau Athon had transferred it to him in consideration of the payment by appellant of a certain promissory note of the said Moreau Athon, held by the First National Bank of Paris, Illinois, for $12,-075, on which appellant was surety.

Moreau Athon was engaged in the dray and transfer

business and in farming. The personal property conveyed had all been used or produced in one or the other of these businesses and consisted of office furniture, horses, colts, wagons, trucks, drays, harness, farm machinery, hogs, pigs, growing corn and the like.

The Circuit Court tried the case without a jury and held that the transfer of the property was void under the provisions of the Act of the General Assembly of the State of Illinois, approved May 3, 1913, known as the Bulk Sales Act, and entered judgment for the defendant and ordered the property returned to the defendant to be sold under the execution by virtue of which it was levied upon.

Section 1 of chapter 121a, Rev. St. [Cal. Ill. St. Supp. 1916, ¶ 10021(1)], known as the Bulk Sales Act, provides, so far as its provisions are important here, as follows:

"That the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures, or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudulent and void as against the creditors of said vendor, unless the said vendee shall, in good faith, at least five days before the consummation of such sale, transfer or assignment demand and receive from the vendor a written statement under oath of the vendor or a duly authorized agent of the vendor having knowledge of the facts, containing a full, accurate and complete list of the creditors of the vendor, their addresses and the amounts owing to each as near as may be ascertained, and if there be no creditors, a written statement under oath to that effect; and unless the said vendee shall at least five days before taking possession of said goods and chattels and at least five days before the payment or delivery of the purchase price, or consideration of any evidence of indebtedness therefor, in

good faith, deliver or cause to be delivered or send or cause to be sent personally or by registered letter properly stamped, directed and addressed, a notice in writing to each of the creditors of the vendor named in the said statement or of whom the said vendee shall have knowledge of the proposed purchase by him of said goods and chattels and of the price, terms and conditions of such sale * * *.''

Appellant presents but two questions for our determination: First. Does the Bulk Sales Act apply to the facts in this case? Second. Had the sheriff a right to levy the same execution on personal property after he had levied the same on real estate and before the real estate had been sold, or, in other words, was the levy of the execution on real estate a satisfaction of the judgment until by a return of the execution unsatisfied the contrary appears?

Appellant insists that the determination of the first question should be governed by what is said in *Heslop v. Golden,* 189 Ill. App. 388, and *H. S. Richardson Coal Co. v. Cermak,* 190 Ill. App. 106.

The court in the case of *H. S. Richardson Coal Co. v. Cermak, supra,* seems to rest its holding on a construction of the statute here under consideration that it does not apply to the sales of all kinds of personal property but was intended to apply only to such property as was a part of a ''business or trade where, in the ordinary course and regular prosecution thereof, the goods or chattels, whatever they might consist of, are not ordinarily and regularly sold by the owner in bulk,'' and in *Heslop v. Golden, supra,* the statute was held to apply only to property ''used in connection with the *business of selling merchandise,* commodities or other wares.''

A former Bulk Sales Act was held unconstitutional and void in *Charles J. Off & Co. v. Morehead,* 235 Ill. 40, because that act was construed to apply only to

merchants selling their stocks in trade, and to be, therefore, special legislation. The holdings in the *Heslop* and *Richardson* cases, *supra,* seem to be an application of the principles announced in the *Morehead* case, *supra,* to the present Bulk Sales Act. We are driven to the conclusion that the present act is not faulty in the respect which the Supreme Court held caused the former act to be void.

The present act was passed shortly after the opinion in the *Morehead* case was handed down, and the Legislature in passing it evidently intended to obviate in the new act the things that were fatal to the old one.

Section 3 of the Act now in force [Cal. Ill. St. Supp. 1916, ¶ 10021(3)] is as follows:

"Vendors and vendees under this act shall include corporations, associations, copartnerships and individuals, who shall be party to any sale, transfer or assignment of goods and chattels in bulk. But nothing contained in this act shall apply to sales by executors, administrators, receivers, trustees in bankruptcy, or by any public officer under judicial process nor to sales of exempt property or any sale or transfer made in the ordinary course of trade and in the regular and usual prosecution of the vendor's business, nor to sales made in good faith at public auction, where notice of such sale is given in a newspaper of general circulation within the county where such sale is made, at least ten days before such sale or by posting of notices in at least five public places at least ten days before said sale."

The opinion in *G. S. Johnson Co. v. Beloosky,* 236 Ill. 363, was written by the same learned justice of the Supreme Court who wrote the opinion in *Charles J. Off & Co. v. Morehead, supra,* and after calling attention to the difference in the language of the two acts the court holds that the last act obviates the objectionable features in the first one, because it "prohibits the

sale of *any goods and chattels in bulk, otherwise than in the ordinary course of trade."*

In *Page v. Wright,* 194 Ill. App. 149, a sale of a livery stock was held to be within the prohibitions of the Bulk Sales Act. The judgment of the Appellate Court in that case was reviewed by the Supreme Court on a petition for certiorari, which was denied.

It cannot be denied that the sale of the property in this case was in bulk, neither can it be claimed that the sale was in the ordinary course of trade, or that any attempt was made to comply with the provisions of the Bulk Sales law. The Circuit Court was clearly right in holding that the attempted transfer of the goods here involved from Moreau Athon to appellant was void, and that appellant acquired no rights thereby as against the creditors of Moreau Athon.

The contention that by levying the execution on real estate the right to levy on personal property was lost is answered adversely in *Everingham v. National City Bank of Ottawa,* 124 Ill. 527.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*