La Salle Opera House Company for use of Goes Lithographing Company, Appellee, v. La Salle Amusement Company, Appellant.

## Gen. No. 23,813.

1.   FRAUDULENT CONVEYANCES, § 15*—*what is sale prohibited by Bulk Sales Act.*   The Bulk Sales Act [Callaghan's 1916 St. Supp. ¶ 10021(1) *et seq.*] is not to be construed as limited, in application, to such goods as are subject, in the course of the vendor's business, to sale other than in bulk, but must be considered as comprehending and applying to all bulk sales of any kind of goods and chattels of the vendor's business, if such sale is otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business, and applies to the sale by a corporation of all the goods and chattels and other property owned by it and used by it in operating a theatre.

2.   STATUTES, § 205*—*when later act presumed to be intended to be of general application.*   Where an act relating to a certain matter has been held unconstitutional as class legislation and thereafter another act is passed relative to such matter, it will be presumed that the later act was intended to be of general application, and it will be so construed if susceptible of such construction.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. APPEAL AND ERROR, § 390*—*what point in garnishment proceeding may not first be raised on appeal.* The objection that the record fails to show by any evidence that the requirement of the Garnishment Act (J. & A. ¶ 5936 *et seq.*), as to the issuance and return of execution, was not complied with, cannot be first raised on appeal.

4. APPEAL AND ERROR, § 1303*—*when evidence presumed sufficient to support court's findings.* On appeal the evidence will be presumed to have been sufficient to support the court's findings where the bill of exceptions contains no recital that it includes all of the evidence in the case.

5. GARNISHMENT, § 24*—*when property illegally sold in bulk may be reached by.* The fact that property sold at a sale, void under the Bulk Sales Act [Callaghan's 1916 St. Supp. ¶ 10021(1) *et seq.*], was subject to existing valid liens which would have exhausted its full value, does not prevent a creditor of the vendor from reaching the property in the vendee's hands by garnishment.

Appeal from the Municipal Court of Chicago; the Hon. JOHN RICHARDSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Affirmed. Opinion filed December 4, 1918. Rehearing denied December 17, 1918.

WICKETT, WALKER & WEGG, for appellant; SILBER, ISAACS, SILBER & WOLEY and CLARENCE J. SILBER, of counsel.

ADOLPH MARKS, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

This is an appeal from a judgment in favor of the Goes Lithographing Company, plaintiff, and against the La Salle Amusement Company, the garnishee, for the sum of $1,348.18.

The La Salle Opera House Company, the nominal plaintiff, was engaged in operating the La Salle Theatre in the City of Chicago, under a lease of the premises occupied by the theatre. In 1913, this company issued bonds in the sum of $40,000, to secure

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

which, it executed a deed of trust, covering the lease-hold and all the personalty it owned and used in connection with the operation of the theatre. The company did not succeed, but made default in the payment of some of the bonds, which were in serial form. Thereupon, in 1914, the La Salle Amusement Company purchased, by bill of sale, from the La Salle Opera House Company, "all and singular, the furniture, fixtures and equipment of every kind and character, and all tangible property and good will of the theatrical business and theatre known as the La Salle Theatre, its trade-mark and trade names and all other property or effects of said La Salle Opera House Company," and also the said leasehold estate, paying for all said property the sum of $50,000. At the time of this sale the Goes Lithographing Company was a creditor of the La Salle Opera House Company. The $50,000 was used by the latter to retire the outstanding bonds, in the sum of $40,000, and the balance was consumed in satisfying various lien claims against the leasehold estate. No part of it was paid to the Goes Lithographing Company. The latter company was never notified of the said sale and transfer of all its property by the vendor, nor by the vendee, nor was any attempt made by the parties to comply with the provisions of the Bulk Sales Act of 1913 [Callaghan's 1916 St. Supp. ¶ 10021(1) *et seq.*]. Subsequently, in 1916, the Goes Lithographing Company brought this suit and procured a judgment for the amount of its claim against the La Salle Opera House Company. Whereupon the La Salle Amusement Company was brought into the case as garnishee, and duly made answer to the interrogations that were filed.

It was stipulated that if the trial court found in favor of the Goes Lithographing Company, the court might render a judgment against the La Salle Amusement Company, the garnishee, for the amount of the Goes Lithographing Company's judgment claim, instead

of entering judgment against the La Salle Amusement Company, requiring it to deliver to the bailiff of the Municipal Court all the personal property, fixtures and furniture purchased by the La Salle Amusement Company from the La Salle Opera House Company, which personal property, fixtures and furniture were admitted to be worth upwards of the amount of the claim of the Goes Lithographing Company.

When the plaintiff rested, the defendant, garnishee, offered no evidence but moved the court to enter a finding discharging the garnishee "for the reason that all of the personal property, fixtures and furniture so purchased by the La Salle Amusement Company from the La Salle Opera House Company is not subject to garnishment, and (the sale) is not in violation of the Bulk Sales Act of the State of Illinois." This motion was overruled and the judgment appealed from was entered.

The principal question presented by this appeal is whether a sale of all the goods and chattels and other property owned by a corporation and used by it in operating a theatre is within the provisions and purview of the Bulk Sales Act of 1913, and, under the terms of that act, void as to the vendor's creditors, unless its provisions are complied with. If it is, such goods and chattels are subject to garnishment in the hands of the vendee, at the suit of the vendor's creditors, or any of them (Rev. St. Ill. ch. 62, sec. 20, J. & A. ¶ 5955), for as to such creditors they would be considered as still belonging to the vendor. *Cohn v. Malo*, 198 Ill. App. 538.

Section 1 of the Bulk Sales Act of 1913 [Callaghan's 1916 St. Supp. ¶ 10021(1)] provides:

"That the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudu-

lent and void as against the creditors of the said vendor, unless'' certain requirements as to notice of such sale, to the vendor's creditors, be complied with. Rev. St. Ill. ch. 121a, sec. 1.

It is the contention of the appellant, La Salle Amusement Company, that, by the application of the familiar rule of *ejusdem generis,* the general words of the statute, ''or other goods and chattels of the vendor's business,'' must be construed to include only things of the same kind as indicated by the particular and specific words, ''stock of merchandise, or merchandise and fixtures.'' It is further contended that in referring to ''other goods and chattels of the vendor's business,'' and in declaring a bulk sale of the major part or the whole of such goods and chattels, void as to the vendor's creditors unless the requirements of the statute are complied with, wherever such sale is ''otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business,'' the General Assembly intended that the act should be considered as applying only to a bulk sale of such goods and chattels as, ''in the ordinary course of trade and in the regular and usual prosecution of the vendor's business,'' were the subject of sale other than in bulk. In other words, it is appellant's contention that unless the ordinary and usual prosecution of the vendor's business involves sales of such goods and chattels in lesser quantities, the statute can have no application to a sale of those goods and chattels in bulk, and that therefore a stock of merchandise or similar commodities must be involved in the sale, to bring it within the Bulk Sales Act of 1913. As the vendor in the case at bar did not deal in merchandise or in any commodity, and inasmuch as the goods and chattels involved here were never the subject of sale in lesser quantities or in any way, ''in the ordinary course of trade and in the regular and usual prosecution of the vendor's business,'' which was that of conducting a theatre, it is appel-

lant's contention that the act can have no application
to a bulk sale of those goods and chattels.

In support of this position, appellant has called
our attention to a number of decisions in other juris-
dictions construing statutes similar to ours and also
to the cases of *Heslop v. Golden,* 189 Ill. App. 388;
*H. S. Richardson Coal Co. v. Cermak,* 190 Ill. App.
106, and *Larson v. Judd,* 200 Ill. App. 420, construing
the statute involved here.

The last case cited is not in point, inasmuch as the
court there came to its decision solely on the ground
that the sale involved was not such as could be con-
sidered a bulk sale, but rather one including a com-
paratively small part of the vendor's goods and chat-
tels. In the case of *Heslop v. Golden, supra,* the court
held that the sale of all his office furniture, by one
conducting an employment agency, was not within
the statute, construing the words "other goods and
chattels of the vendor's business" to mean only such
goods and chattels as were "used in connection with
the business of selling merchandise, commodities or
other wares." In the case of *H. S. Richardson Coal
Co. v. Cermak, supra,* the court held that a sale of a
double team of horses including harness and wagon,
which the vendor had been personally using to haul
coal for others, at a compensation of so much per
ton, was not within the statute. The court there held,
that the statute must be presumed to relate to a busi-
ness or trade, where, in the ordinary course and regu-
lar prosecution thereof, the goods or chattels, what-
ever they might consist of, are not ordinarily and
regularly sold by the owner in bulk.

As against these cases may be cited the case of
*Page v. Wright,* 194 Ill. App. 149; and *Athon v. Mc-
Allister,* 205 Ill. App. 41. In the former case the sale
of a livery stock, including an automobile, a gasoline
engine, lighting plant and oil tank, was held to be
void for noncompliance with the Bulk Sales Law. In

the latter case a sale of certain office furniture, horses, colts, wagons, trucks, drays, harness, farm machinery, hogs, pigs, growing corn and the like, by one engaged in the dray and transfer business and in farming, all of which property had been used or produced in one or the other of these businesses, was held to be within the provisions of the Bulk Sales Law and void because of noncompliance therewith.

We agree entirely with the decision of the court, in the last case cited, to the effect that our Supreme Court, in the interpretation it has given this act, has said that the act cannot be given the narrow construction here contended for, but must be considered as comprehending and applying to all bulk sales of any kind of "goods and chattels of the vendor's business," if such sale is "otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business."

Our General Assembly passed a Bulk Sales Act in 1905. That act was limited, in its operation, to so-called bulk sales of a "stock of merchandise." Our Supreme Court held this act to be unconstitutional in *Charles J. Off & Co. v. Morehead*, 235 Ill. 40. The court there said that the words "stock of merchandise" as used in that act, were equivalent to "stock in trade," and that the statute was limited in its application to stocks of goods such as were kept for sale by merchants and tradesmen in the ordinary course of their business. The court pointed out that the statute had no application "to a sale by a manufacturer of all his machinery, tools, finished articles and raw material; or by a farmer of all his live stock, farm implements, crops, grown or growing, and household goods; or by a hotelkeeper of his entire business and all the property therein" (and the court might have added the illustration of a sale by a proprietor and owner of a theatre, of his entire business and all the property therein); "or by a livery or

628    Appellate Courts of Illinois.

La Salle Opera House Co. v. La Salle Amusement Co., 212 Ill. App. 621.

transfer company of all its rolling stock, harness and horses owned and used in the business; or by a publisher of all his presses, printing machinery and appliances; or by a mine owner of all the property owned and used in the mining business; or to a sale by a miller who may sell his business, mill machinery and the grain and its products on hand." The court called attention to the fact that as to these and all other sales, except of stocks of merchandise, "the law indulges the presumption of honesty and fair intentions * * *, either in or out of the ordinary course of business, with or without an inventory, and in bulk or by parts and parcels." The court said that there was no common disability, attribute or qualification connected with a stock of merchandise, or in respect to the persons dealing in the same, which would warrant the legislature in marking the same for special protective legislation from which all other classes of persons and of goods and chattels were excluded. Inasmuch as the act there under consideration was construed to have that effect, the Supreme Court held it to be special class legislation and therefore unconstitutional and void.

The construction of the Act of 1913, for which appellant here contends, is precisely that which our Supreme Court gave to the Act of 1905, and as a result of which they declared it to be unconstitutional. That we are bound not to give such a construction to the Act of 1913 follows from the fact that the Supreme Court has had occasion to construe that act also and pass upon its constitutionality, and has held that it does not contain the defects which that court previously pointed out in passing upon the former act, and that the later act is constitutional. In so holding in *G. S. Johnson Co. v. Beloosky*, 263 Ill. 363, the Supreme Court points out that section 1 of the later Act includes within its terms, "the sale, transfer, or assignment * * * of a stock of merchandise, or merchandise

and fixtures or *other goods and chattels of the vendor's business,*" and the court further points out that "thereafter in said section the property, the sale of which is affected by said act, is referred to as 'said goods and chattels.' In section 2 of the new Act [Callaghan's 1916 St. Supp. ¶ 10021 (2)] the same language is used in reference to the property, the sale, transfer or assignment of which is affected by the act." The court then proceeds as follows: "It must be assumed that the legislature, in passing the new act, had before it the decision of this court holding the former act unconstitutional because it was special class legislation, and that it was the intention of the General Assembly, in passing the later act, to obviate this objection by passing a general act *applicable indiscriminately to the sale of any goods and chattels* in the manner inhibited by section 1 of that Act. Construing the new act as a *general law* which prohibits the sale of *any goods and chattels* in bulk, otherwise than in the ordinary course of trade in the regular and usual prosecution of business, the objection to which the former statute was open is obviated." The sale in question in that case involved the entire stock in trade, store fixtures and the wagon and team used in connection with the vendor's bakery business. In view of these decisions by the Supreme Court, we hold that the Bulk Sales Act of 1913 applies to the sale of the personal property, fixtures and furniture covered by the bill of sale involved in the case at bar. The unreasonableness of the law as so construed, which appellant has urged upon our consideration, whether or not it exists, is, as the Supreme Court has pointed out in the case last cited, a legislative question, with which we may not concern ourselves.

Two further questions remain to be passed upon. Appellant contends that the judgment of the trial court should be reversed because the record fails to show by any evidence that the requirements of sec-

630 APPELLATE COURTS OF ILLINOIS.

La Salle Opera House Co. v. La Salle Amusement Co., 212 Ill. App. 621.

tion 1 of the Garnishment Act (J. & A. ¶ 5936), as to the issuance of execution and the return thereof "no property found," were complied with.

There are two reasons why this question cannot be urged now. Appellant is raising it here for the first time. At the conclusion of the evidence, it moved the court to discharge the garnishee, not for the reason now urged, namely, that there was a failure of proof as to the issuance of execution and its return as required by the Garnishment Act, but for the reason that the property in question was not subject to garnishment and the sale not within the Bulk Sales Act. The point urged now by appellant was thereby waived by it so far as this appeal is concerned. Further, the bill of exceptions contains no recital that it includes all the evidence in the case. We are therefore obliged to presume that, so far as the evidence is concerned, there was sufficient to authorize the court's finding.

It is appellant's further contention that in the possession of the vendor, the La Salle Opera House Company, the personal property, fixtures and furniture in question were subject to existing valid liens, which would have exhausted its full value, hence there was nothing reachable for the benefit of appellee, either by execution or otherwise. This sale was not void under the terms of the statute, as between the vendor and vendee, but as between them it was valid. As a result of that sale the lien and mortgage creditors have ceased to exist for they were paid in full by the vendor of the property, with the money realized from the sale. But in adjudicating the rights of this appellee, who remains a creditor of the vendor, we are obliged to hold that, *so far as appellee is concerned,* the sale was void for the reasons heretofore given, and appellee may reach such goods and chattels in the hands of the vendee, by garnishment proceedings. *Cohn v. Malo,* 198 Ill. App. 538. Appellee is entitled to have

its claim satisfied out of the personal property, fixtures and furniture, as such goods and chattels exist when reached by it in the hands of the garnishee, by means of garnishment proceedings.

For the reasons stated the judgment of the Municipal Court will be affirmed.

*Affirmed.*