## Hjalmar Larsen for use of Raoul J. Gagne, Appellant, v. Carl Ritter, Appellee.

### Gen. No. 27,909.

GARNISHMENT—*right as affected by noncompliance with Bulk Sales Act.* Garnishment proceedings may be maintained by a judgment creditor against one who purchased a stock of goods from the judgment debtor and paid the full purchase price therefor to such debtor without complying with the provisions of the Bulk Sales Act, Cahill's Ill. St. ch. 121a, ¶ 1.

BARNES, P. J., dissenting.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. JOSEPH W. SCHULMAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Reversed and remanded. Opinion filed January 2, 1923.

WILBERT F. CROWLEY, for appellant.

WINSTON, STRAWN & SHAW, for appellee; HAROLD BEACOM, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In the present garnishment proceeding against Carl Ritter, the municipal court, on April 26, 1922, after a hearing without a jury, found the issues for the garnishee and adjudged that he be discharged and recover his costs against the beneficial plaintiff, Gagne. This appeal followed.

It further appears from the clerk's transcript that on February 6, 1922, Gagne obtained a judgment by confession against Larsen on certain judgment notes, dated September 15, 1921, in the sum of $721, and costs; that an execution was issued on the judgment, which on February 10, 1922, was duly returned by the bailiff "no property found and no part satisfied"; that on February 11 an affidavit for a garnishee sum-

mons in the usual form was filed in said court; that the writ was issued and served on Ritter as garnishee on February 24; and that subsequently Ritter entered his appearance and there was a hearing, with the result as above stated.

It appears from the bill of exceptions that the hearing was somewhat informal, that no witnesses were examined, but that certain facts were orally stipulated to by the respective attorneys. At the commencement of the hearing Ritter's attorney stated that Ritter, as garnishee, now orally answers that at the date of the service of the writ upon him he did not have, nor has he at the present date, April 19, 1922, in his possession, custody or control any money, property or effects belonging to Larsen. Gagne's attorney then stated that Gagne would accept such oral answer as the answer of the garnishee, and desired to be recorded as making a traverse to such answer, to the effect that Ritter, as garnishee, has not truly discovered and answered as to the goods, moneys and effects in his possession or custody, or from him due and owing to Larsen, at the time of the service of the garnishment writ or at the present time. Thereupon Ritter's attorney stated that he would accept such statement as a traverse to the answer. Thereupon the following facts, in substance, were orally stipulated to: Gagne originally purchased a business and stock of goods from Ritter. Gagne conducted the business for a time and then sold the same to Larsen, taking as part payment Larsen's said judgment notes. Thereafter Larsen sold the business and stock of goods to Ritter, who paid him in full for the same. At the time of this last sale, the judgment notes held by Gagne were unpaid, and Gagne caused the judgment of February 6, 1922, to be entered and now seeks to hold Ritter as garnishee for the reason that the latter purchased said business and stock of goods without demanding and receiving from Larsen his sworn written statement, and with-

out giving the notices in writing, as required by the "Bulk Sales Act" of Illinois (Cahill's Ill. St. ch. 121a, ¶ 1).

Ritter's attorney, while conceding that in the sale of the stock of goods from Larsen to Ritter the requirements of said act had not been complied with, stated to the court, in substance, that his contention was that Ritter was under no liability in this *garnishment* proceeding, and for the reason that Gagne had no greater rights against Ritter than Larsen had against him and Larsen could not recover from Ritter, because he had been paid in full for the sale and transfer of the stock of goods. Thereupon the court stated that the first question to be decided was "whether or not garnishment is the proper action here." Arguments by the respective attorneys followed, during which Gagne's attorney contended in substance that, the sale being fraudulent and void, under the Bulk Sales Act, as to Gagne and other creditors of Larsen, there was in law no sale, and no title to the stock of goods passed to Ritter, and that Ritter, as garnishee, was liable to Gagne. The court finally held that "garnishment will not lie." Thereupon propositions of law, which properly preserved the question for review, were submitted and marked by the court in accordance with the holding, and the court said: "Garnishee discharged"; and the finding and judgment above mentioned followed. It does not appear that any stipulation was entered into by the parties, or that any evidence was offered by Gagne, concerning the questions, whether any portion of the goods sold to Ritter remained in his custody and control at the time of the service of the garnishment writ, or whether any portion or all of the same had prior thereto been sold by Ritter to a third person, or what were their value at any time.

In the case of *Hibernian Banking Ass'n v. Morrison,* 188 Ill. 279, decided several years before the pres-

ent Bulk Sales Act of Illinois was passed, it is said
(p. 281): "The general rule is that a judgment cred-
itor garnisher cannot recover from a garnishee
anything which the judgment debtor could not himself
recover.   Indeed, a garnishee proceeding based upon
a judgment is a separate suit in the name of the judg-
ment debtor for the use of the judgment creditor.   The
fact that the suit is for the benefit of a usee does not
enlarge or change the right of the nominal plaintiff,
as against the garnishee." In *Jaques & Tinsley Co. v.
Carstarphen Warehouse Co.*, 131 Ga. 1, it appears that
there was in force in the State of Georgia a Bulk Sales
Act very similar to the present Illinois Act, and it was
decided in substance that, upon a sale being made of
goods in bulk, which sale as to creditors of the vendor
was fraudulent and void under the act, the vendee was
liable in a garnishment proceeding instituted at the
instance of a creditor of the vendor for the value of
the goods up to the amount of the creditor's indebted-
ness.   The court said (p. 2): "As a general rule, a
garnishee's liability to a creditor of the principal de-
fendant is conditioned upon his liability to such
defendant,—in other words, a creditor cannot reach
by garnishment any assets which his debtor could not
recover from the garnishee.   *   *   *   This rule is sub-
ject, however, to an exception, where the garnishee is
in possession of effects of the defendant under a trans-
fer fraudulent as to his creditors.   In such a case,
though the defendant can maintain no action against
the garnishee, yet a creditor of the defendant may
subject the effects in the garnishee's hands by gar-
nishment.   Such exception to the general rule has in
several states been created by statute, but in many
jurisdictions the courts have recognized it in the ab-
sence of a statute."   We are not aware that, since the
passage of the present Illinois Bulk Sales Act, the
Supreme Court of this State has passed upon the pre-
cise point.   But the question has been considered by

the Appellate Court for the first district in several cases. In *Cohn v. Malo,* 198 Ill. App. 538, the second branch court decided, in substance, that goods and chattels obtained by a sale from a debtor contrary to the provisions of said act, and consequently void as to creditors of the vendor, may be reached by such creditors in garnishment proceedings. This decision has been followed in the cases of *National Trust & Credit Co. v. Elmes,* 207 Ill. App. 153; *LaSalle Opera House Co. v. LaSalle Amusement Co.,* 212 Ill. App. 621; *Superior Plating Works v. Art Metal Crafts Co.,* 218 Ill. App. 148; and *Monski v. Smith,* 224 Ill. App. 206. The *LaSalle Amusement Co.* case, *supra,* was appealed to the Supreme Court, where the judgment of the Appellate Court was reversed, though not apparently for the reason that a garnishment proceeding, for which the proper foundation was shown of record as in the present case, would not lie. (289 Ill. 194, 197.)

In the *Monski* case, *supra,* the facts were very similar to the stipulated facts in the present case, and the judgment rendered by the trial court in favor of the garnishees was reversed and the cause remanded. It further appeared in that case that the garnishee prior to the service of the summons upon them had sold the goods, purchased in violation of the Bulk Sales Act, to a third party, and had received the proceeds of the sale. In its opinion this Appellate Court said:

"The right to garnishment against the purchaser of a debtor's business, the sale being made in violation of the Bulk Sales Act, is not limited to cases where the purchaser still has in his possession the identical goods purchased from the debtor at the time of the service of the garnishment writ. We see no reason to distinguish between the goods and chattels which were sold in violation of the law and the proceeds derived from their sale by the fraudulent purchaser. As against the creditor, the goods and chattels continued, in the contemplation of the law, to be the property of the debtor, regardless of the fraudulent sale thereof.

By the same line of reasoning, the proceeds derived from their sale by the purchaser under the fraudulent sale must be regarded as the debtor's property. * * * We are of the opinion that the purpose and effect of the Bulk Sales Act were to render goods, sold in violation of the act, trust property in the custody of the vendee for the benefit of the vendor's creditors. If the vendee under a fraudulent sale of this character afterwards sells the goods he is liable under a subsequent garnishment proceeding for their value at the time he sells them and the proceeds may be applied to the satisfaction of the garnishee's debt against the principal defendant. (*Jaques & Tinsley Co. v. Carstarphen Warehouse Co.*, 131 Ga. 5; *Friedman v. Branner*, 72 Wash. 338; *Interstate Rubber Co. v. Kaufman*, 98 Neb. 562.) Neither the exact amount of the proceeds derived by the garnishees from the sale of the property in question nor the value of the goods and chattels at the time of the sale is shown by the evidence. Therefore, it is impossible for this court to determine the exact amount of the liability of the garnishees.''

In view of the above-mentioned decisions, of the stipulated facts as disclosed in the present record, and of the ruling of the court during the progress of the hearing, to the effect, in substance, that plaintiff could not recover in a garnishment proceeding, we are of the opinion that the judgment of the municipal court which followed should be reversed and the cause remanded for a new trial, and it is so ordered.

*Reversed and remanded.*

MORRILL, J., concurs.

MR. PRESIDING JUSTICE BARNES dissenting: Appellant neither proved nor offered to prove the value of the goods sold to appellee. Without such proof he could not have judgment. The evidence being insufficient to support a judgment for him, he cannot complain that it was rendered against him, the court not having excluded any evidence he offered. In such a state of the record, the court's ruling on propositions

of law had no material bearing. Had the court ruled in his favor, it would have been of no avail to him in view of the insufficiency of the evidence; hence there was no reversible error in the rulings on the propositions of law, for whatever they were, they would not change the necessity of entering a judgment against appellant because of the insufficiency of the evidence.

The record merely shows that when in the course of a colloquy between the court and counsel, the court intimated views contrary to appellant's theory of the law, appellant ceased to offer further evidence, rested his case and submitted propositions of law. The court's expressed views did not constitute a "ruling." There was nothing at that time before the court to rule upon. No motion was made, no witness interrogated, no offer made—nothing that called for a "ruling" which would form the basis of an exception on which to predicate error. Appellate courts do not review interjected remarks of the trial judge except for prejudicial effect. Contrary to our system of procedure, appellant thus seeks to try his case piecemeal and brings before this court merely an academic question, namely, what would have been the law applicable to the case had appellant offered sufficient evidence to support his theory of it. It being his own fault that he did not introduce sufficient evidence for a judgment in his favor, he should not be given a second opportunity to do so. Hence the judgment should be affirmed.