## Ogden Avenue State Bank, Appellant, v. Sam Cherry and Joe Cherry, Appellees.

### Gen. No. 27,052.

1. SALES—*insufficiency under Bulk Sales Act of statement of seller's debts.* Bulk Sales Act of Illinois (Cahill's Ill. St. ch. 121a, ¶ 1), providing that sales of a whole stock of merchandise otherwise than in the ordinary course of business shall be fraudulent and void as against creditors of the seller, unless the buyer shall demand and receive a written statement of the seller's creditors within 5 days, is not complied with by a mere inquiry by the buyer as to whether the seller owed any money on the store sold, and by the giving of an affidavit by the latter that such property was clear of all debts and that the seller did not owe any person for goods, wares and merchandise.

2. SALES—*invalidity under Bulk Sales Act for failure to give list of creditors.* A sale of a store business worth $14,000 for a sum in the vicinity of $5,000 tends to show actual fraud in fact, as to creditors of the seller, and must be treated as void where there is a failure to comply with the Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶ 1) as to furnishing a list of the seller's creditors to the buyer.

3. SALES—*applicability of Bulk Sales Act where seller retains other stores.* The Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶ 1) applies to a sale of an entire business conducted at one place, even

202    APPELLATE COURTS OF ILLINOIS.

Ogden Avenue State Bank v. Cherry et al., 225 Ill. App. 201.

though the seller conducts two other similar stores equipped with fixtures and merchandise.

4. SALES—*when relief not be denied creditor, Bulk Sales Act having been violated.* The fact that a complaining creditor cannot recover a personal judgment against a buyer of a grocery store business, even though there has been a violation of the Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶ 1) in that the seller did not furnish a list of creditors, will not warrant dismissing the complainant's bill for relief, when the bill seeks to discover the facts concerning the transfer, prays for the setting aside of the sale, the restraining of the disposition of the property, for a receiver, etc.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded with directions. Opinion filed May 1, 1922.

MILLARD R. POWERS, for appellant.

GESAS, EPSTEIN & LEONARD, for appellees; MICHAEL GESAS, of counsel.

MR. PRESIDING JUSTICE DEVER delivered the opinion of the court.

In a bill of complaint filed in the superior court of Cook county the Ogden Avenue State Bank, complainant, charged that on January 30, 1920, it obtained a judgment against Sam Cherry, defendant, for $13,939.46; that an execution was issued on the judgment to the sheriff of Cook county, who made a demand for payment, and that said judgment has not been paid and remains in full force.

The bill further charged that while indebted to complainant Sam Cherry conducted a retail grocery business at 657 Maxwell street, Chicago; that said Cherry while so indebted sold and transferred the stock of merchandise, fixtures and appliances of said business and also the lease of said premises to his brother, Joe Cherry, defendant, without complying with the Bulk Sales Act of Illinois.

It is stated in the answer filed by defendants and

shown by the evidence introduced, that at the time
of the transfer of the property in question Sam
Cherry gave to his brother an affidavit which recited
that Sam Cherry owned the merchandise, fixtures and
lease in question, and that "the same are free and
clear of all debts of whatsoever nature at this date,
and that I owe no person for any of said goods, wares
and merchandise."

The bill of sale of the property from Sam Cherry
to his brother describes the property conveyed as
"that certain stock of merchandise, groceries, etc.,
store fixtures and everything contained in the store,
situated at 657 Maxwell street." At the time of the
sale Sam Cherry owed complainant $15,900. On May
24, 1919, he was adjudged a bankrupt and complain-
ant thereafter received, as the bankrupt's creditor,
certain dividends out of his estate. The evidence
shows that Sam Cherry, in violation of promises made
by him in a financial statement furnished complainant,
gave no notice to complainant of the sale of the prop-
erty in question.

The decree entered in the cause found that the de-
fendant, Sam Cherry, was indebted for a balance due
on the judgment in the sum of $9,863; that the de-
fendant, Joe Cherry, purchased the merchandise and
fixtures in question and an assignment of the lease
to the store, paying therefor the sum of $5,827.74;
that the merchandise sold at the time was worth
$14,000; that at the time of the sale Sam Cherry was
engaged in a wholesale and retail grocery business
and was conducting two other stores similarly
equipped with fixtures and stocks of merchandise;
that the sale in question did not constitute "a sale
in bulk of the major part of the merchandise other-
wise than in the ordinary course of trade, within the
meaning of the Statute of State of Illinois relating
to bulk sales"; that in the making of said sale neither
of the defendants had violated the Bulk Sales Law of

Illinois; that said sale was in the ordinary course of business; that the complainant is not entitled to the relief prayed for in his bill.

The court dismissed complainant's bill for want of equity. Complainant seeks to reverse this decree by appeal to this court.

It is a principal contention of the complainant that the record before us shows that in the transfer of the property in question the Bulk Sales Statute of Illinois [Cahill's Ill. St. ch. 121a, ¶ 1] had not been complied with. This statute provides that the sale of the whole of a stock of merchandise, or merchandise and fixtures of a vendor's business, otherwise than in the ordinary course of trade and in the usual prosecution of the business, shall be fraudulent and void as against creditors of the vendor unless within 5 days before the sale the vendee shall demand and receive from the vendor a written sworn statement containing a full and complete list of the vendor's creditors, and addresses, and the amounts owing to each. The law further imposes upon a vendee in such case the duty of causing to be delivered to such listed creditors of the vendor, at least 5 days before payment of the purchase price of the property sold, a notice in writing of the proposed purchase by the vendee of the property.

The evidence does not disclose that Joe Cherry at the time he purchased the property made any demand upon his brother, the vendor, for a list of his creditors as required by the statute. Sam Cherry testified that Joe had asked him whether "I could give him an affidavit whether I owe any money on the store. I told him I didn't owe any money on that store." The affidavit which was given by Sam Cherry to his brother merely stated that the property in question was clear of all debts and that he, Sam Cherry, owed no person for any of said goods, wares and merchandise. The request for this affidavit

by Joe Cherry and its delivery to him by his brother was not by any means a compliance with the spirit or the letter of the Bulk Sales Statute [Cahill's Ill. St. ch. 121a, ¶ 1]. That law was enacted for the purpose of protecting creditors from fraudulent sales of the whole of a stock of merchandise or merchandise and fixtures.

The evidence in this case shows and the decree finds that at the time the sale was made the merchandise sold was worth $14,000 and that Joe Cherry paid his brother only $5,827.74 for the entire property transferred. The transfer upon its face, whatever the intent of the parties, was well calculated to impose a fraud upon complainant or other of Sam Cherry's creditors.

The law which imposed upon the vendee the duty of demanding a list of the vendor's creditors was not complied with by request for an affidavit as to whether Sam Cherry owed any money on the store.

Joe Cherry, while testifying in the bankruptcy proceedings in the United States District Court, was asked the question, "Did you not ask your brother Sam to furnish you with a list of his creditors so that you could notify them that you had bought the entire business?" He answered, "No, sir, I didn't think it necessary."

There is some evidence in the record which tends to prove that the defendants were guilty of a fraud in fact in the transfer of the property in question, but however that may be, we think it clear that the transfer was made in violation of the Bulk Sales Act [Cahill's Ill. St. ch. 121a, ¶ 1], and that it must be treated as void as against the complainant. The cases cited by complainant sustain this holding. *Joplin Supply Co. v. Smith*, 182 Mo. App. 212.

In *Peck v. Nibben*, 185 Ind. 623, the court said:

"The affidavit recites that the seller is the sole owner of the stock of goods, and that there are no

206     APPELLATE COURTS OF ILLINOIS.

Ogden Avenue State Bank v. Cherry et al., 225 Ill. App. 201.

liens on it or suits pending to affect the title, but contains no reference to creditors. * * * Counsel for appellees assert that the statute should receive a liberal construction, and that so construed the answer stated a defense. We hold otherwise. * * * Holding such an answer sufficient would amount to a practical repeal of the statute. Courts are not invested with such power.''

It is further insisted that the Bulk Sales Statute [Cahill's Ill. St. ch. 121a, ¶ 1] is not applicable to the facts of the present case, and in support of this contention it is said that the evidence shows and that the decree finds that the defendant, Sam Cherry, at the time of the sale of the property in question, was engaged in the wholesale and retail grocery business in Chicago and was conducting two other stores similarly equipped with ''fixtures and stocks of merchandise for the sale of groceries,'' in which latter store there was merchandise of the value of $56,000; that the sale of the whole of the merchandise and the fixtures contained in the premises at 657 Maxwell street, together with the lease of said premises, did not constitute a sale in bulk of the major part of the merchandise otherwise than in the ordinary course of trading within the meaning of the statute. We do not agree with this contention.

The evidence shows that before the sale Sam Cherry conducted a separate and distinct retail grocery business at 657 Maxwell street; that at the time of the sale, or shortly thereafter, he was indebted in a total sum of $70,000, and that his total assets amounted to only $22,000. The sale in question was not made in the ordinary course of trade nor in the usual prosecution of Sam Cherry's business; it constituted the transfer of the entire business conducted by him at a particular place, which business was distinct from the business conducted at the two stores referred to above.

The cases of *Richardson Coal Co. v. Cermak*, 190

Ill. App. 106, and *Hart v. Brierley,* 189 Mass. 598, are relied upon by defendants. In the former case the vendor sold a team of horses, including harness and wagon, which were used for hauling coal, and the court held that the Bulk Sales Statutes was not applicable to such sale. In the latter case the court said:

"The statutory test is whether the sale was made in the usual way in which a merchant owing debts conducts his business, or whether he takes an unusual method of disposing of his property in order to get the money for his own use, leaving his creditors unpaid. This inquiry is essentially an issue of fact depending upon the nature of the seller's business, his ordinary method of making sales, and his indebtedness. A sale of his entire stock by one trader might not be uncommon, while such a sale, if made by another, would be extraordinary and within the statute."

The evidence shows that Sam Cherry, in violation of the rights of his creditors, transferred an entire and distinct business to his brother. The subject-matter of the sale was the whole of the stock of merchandise used in the separate business conducted at 657 Maxwell street, together with the fixtures and lease. We think the sale was in violation of the statute which was enacted for the purpose of preventing frauds such as are shown by this record.

It is said that even if the sale was in violation of the Bulk Sales Statute [Cahill's Ill. St. ch. 121a, ¶ 1], the complainant cannot recover a personal judgment against Joe Cherry. There is some authority in this State which tends to support this contention of defendants. *Chicago Specialty Shoe Co. v. Uhwat,* 197 Ill. App. 460. That case, however, was an action at law by a creditor who claimed to have been injured by a failure to comply with the act. It is shown by the evidence here that the defendant Joe Cherry did not comply with the statute. He admits that he re-

ceived the stock of merchandise in question; that he has sold the same and has appropriated the proceeds to his own use. He was in possession apparently at the time of the trial of the stock of fixtures and the leasehold. In the case of *Page v. Wright*, 194 Ill. App. 149, it was held that in a chancery suit against one so violating the Bulk Sales Act [Cahill's Ill. St. ch. 121a, ¶ 1] a personal decree could be rendered in favor of a complainant for the amount due him. A writ of certiorari was denied in that case by the Supreme Court. But whatever may be held to be the law on this question, the prayer of the bill filed by complainant does not ask for a personal decree against the defendants. The bill seeks to compel the defendants to discover the facts concerning the transfer, to set aside a pretended sale and transfer of the property, and to declare the sale null and void. The bill further prayed for an injunction restraining a disposition of the property transferred and for a receiver, etc.

The decree of the superior court is reversed and the cause remanded to that court with directions to vacate the order dismissing the bill for want of equity and to take such further proceedings in the cause as may not be inconsistent with the views herein expressed.

*Reversed and remanded with directions.*

McSURELY and MATCHETT, JJ., concur.