**William Frieling for use of Henry Dummer, Appellee, v. Frank P. Emling and Joseph Smith, Appellants.**

**Gen. No. 7,887.**

Opinion filed April 14, 1928.

Amos H. Robillard and C. M. Granger, for appellants.

H. H. Whittemore, for appellee.

Mr. Justice Boggs delivered the opinion of the court.

Appellee Henry Dummer filed an affidavit in the circuit court of Kankakee county on November 16, 1922, setting forth that he had recovered a judgment for $2,315 against one W. C. Frieling, on which execution had been returned "No property found"; that said Frieling had no property liable to execution, praying garnishment process against appellants, partners, etc., one F. G. Wilson and one Mary Frieling.

Interrogatories four and five to be answered by appellants were as follows:

"4. If they purchased 'a certain stock of merchandise in bulk in store and business at Bonfield, Ill., from said Frieling'; if yes, give details of transaction in full.

"5. If as such purchasers they complied with the Bulk Sales Act, by securing a statement and giving notice to creditors." The answer to the fourth interrogatory was "that they did purchase a certain stock of merchandise in bulk in store and business at Bonfield, Illinois, from W. C. Frieling, and took possession of same on October 27, 1921, and agreed to pay and actually paid him $1,000.00 therefor and that said agreement was oral." To the fifth interrogatory, appellants answered that "they did not comply with the Bulk Sales Law, said transaction not coming within the scope thereof or being subject thereto."

At the close of appellee's evidence, the proceeding was dismissed as to the defendant Wilson and the

court directed a verdict for defendant Mary Frieling. At the close of all the evidence, the court directed a verdict in favor of appellee, and rendered judgment thereof against appellants and in favor of William Frieling for the use of appellee Henry Dummer for $1,000. To reverse said judgment, this appeal is prosecuted.

The record discloses that prior to 1919, Frieling conducted a grocery, hardware, dry goods and general merchandise store, a grain elevator, a coal yard and a farm implement store at Frieling Station, where he resided. In the latter part of 1919 or the early part of 1920, Frieling opened a general merchandise store at Bonfield, a station some 2.3 miles from Frieling Station. In reference to the operation of the Bonfield store, appellants' brief and argument contains this statement: "He (Frieling) was accustomed to purchase lots of goods, and place part in the Frieling Station and part in the Bonfield store. The actual selling operations of the Bonfield store were confided to two clerks, employees of Frieling, whose wages he paid. A daily report of the Bonfield business was made to him at Frieling Station, and he daily received at Frieling Station a tally sheet from the cash register at Bonfield." Said statement further sets forth that on September 1, 1921, "he had a stock of general merchandise at Frieling Station worth $3,000.00, a similar stock at Bonfield worth $1,000.00, elevator, grain and coal worth $8,000.00 at Frieling Station, and $10,000.00 worth of implements also at Frieling Station."

The question arising on this record is as to whether, on the facts disclosed, the court erred in directing a verdict against appellants, garnishees. It is the contention of appellants that the sale of the Bonfield store did not amount to "the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise * * * otherwise then in the ordinary course of trade and in the regular and usual prosecu-

tion of the vendor's business,'' as contemplated by Cahill's St. ch. 121a, ¶ 1. In other words, counsel insist that the business being transacted by Frieling at Frieling Station and at Bonfield constituted but one business, and that the sale of the Bonfield store was the sale by Frieling of only a small part of his business, and that therefore the Bulk Sales Law, Cahill's St. ch. 121a, ¶ 1 *et seq.,* would not apply.

In *Ogden Avenue State Bank v. Cherry,* 225 Ill. App. 201, the court at page 206 in discussing a similar question, says:

''It is further insisted that the Bulk Sales Statute [Cahill's Ill. St. ch. 121a, ¶ 1] is not applicable to the facts of the present case, and in support of this contention it is said that the evidence shows and that the decree finds that the defendant, Sam Cherry, at the time of the sale of the property in question, was engaged in the wholesale and retail grocery business in Chicago and was conducting two other stores similarly equipped 'with fixtures and stocks of merchandise for the sale of groceries,' in which latter store there was merchandise of the value of $56,000; that the sale of the whole of the merchandise and the fixtures contained in the premises at 657 Maxwell street, together with the lease of said premises, did not constitute a sale in bulk of the major part of the merchandise otherwise than in the ordinary course of trading within the meaning of the statute. We do not agree with this contention.

''The evidence shows that before the sale Sam Cherry conducted a separate and distinct retail grocery business at 657 Maxwell street; that at the time of the sale, or shortly thereafter, he was indebted in a total sum of $70,000, and that his total assets amounted to only $22,000. The sale in question was not made in the ordinary course of trade nor in the usual prosecution of Sam Cherry's business; it constituted the transfer of the entire business conducted by him at a

particular place, which business was distinct from the business conducted at the two stores referred to above.''

The undisputed evidence in the record clearly discloses that, under the Bulk Sales Law, Cahill's St. ch. 121a, ¶ 1 *et seq.*, the store at Bonfield was a separate business from that operated by Frieling at Frieling Station. The court therefore did not err in directing a verdict for appellee.

It is next contended by appellants that the court erred in rendering a personal judgment against them.

Appellant Joseph Smith testified: ''When we bought the personal property (the stock of goods at Bonfield) we lumped it at $1,000, which we figured was the fair cash market value. * * * We paid Frieling for it, paid him the money in his office down there at Frieling.''

On this admitted state of facts, the court did not err in rendering a personal judgment against appellants. *Monski for use of Richard Pick Mfg. Co. v. Smith,* 224 Ill. App. 206; *Ogden Avenue State Bank v. Cherry, supra,* 207; *Larsen v. Ritter,* 227 Ill. App. 300; *Browning for use of Valier State Bank v. Spurrier,* 245 Ill. App. 276–281.

Lastly, it is insisted that, in any event, the court should have submitted the question to the jury as to whether the Bonfield store was a separate entity. As hereinabove set forth there was no real conflict in the evidence with reference to how the Bonfield store was being operated. That being true, it was a question of law, as to whether its sale in its entirety was in violation of the Bulk Sales Statute, Cahill's St. ch. 121a, ¶ 1 *et seq.* It therefore follows that the court did not err in directing a verdict. *Marshall v. John Grosse Clothing Co.,* 184 Ill. 421–425.

, For the reasons above set forth, the judgment of the trial court will be affirmed.

*Judgment affirmed.*