THE CONNECTICUT STEAM BROWN STONE COMPANY
*vs.* HENRY L. LEWIS ET AL.

Third Judicial District, Bridgeport, October Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

Chapter 21 of the Public Acts of 1909 provides that when one who makes it his business to buy commodities and sell the same in small quantities for the purpose of making a profit, shall, at a single transaction not in the regular course of business, sell, assign, or deliver the whole or a large part of his stock in trade, such sale shall be void unless he has recorded, at least ten days before, a written notice of his intention to make it.  *Held* that persons who operated a stone-yard, buying stone slabs which they chiseled, tooled, cut, dressed and polished, to meet the requirements of each particular order, and then sold in a materially different form and condition, and greatly enhanced in value because of their labor, could not fairly be said to be engaged in the business of buying stone slabs and selling "the same" in small quantities, but rather in the business of selling

for a profit the product of their own labor; and therefore the Act in question did not apply to a sale by them of the entire contents of their stone-yard without having given the statutory notice of intention.

No definite rule can be laid down which will always furnish an answer in every case that may arise; though the extent to which the materials originally purchased are changed by the labor of the purchaser before they are sold by him as finished commodities, is always an important element for consideration.

A wholesale dealer or manufacturer who makes an occasional sale at retail, cannot properly be said to "make it his business" to sell "in small quantities" within the meaning of the Act aforesaid.

Argued October 29th—decided December 19th, 1912.

ACTION to recover the amount of a bond given by the defendants to dissolve an attachment of property, brought to and tried by the Court of Common Pleas in Fairfield County, *Scott, J.;* facts found and judgment rendered for the plaintiff for $677, and appeal by the defendants. *Error; judgment to be entered for defendants.*

*Henry C. Stevenson,* for the appellants (defendants).

*Thomas M. Cullinan,* for the appellee (plaintiff).

HALL, C. J.   On February 11th, 1911, the plaintiff company brought an action against William B. Mahoney and Thomas Gill, and attached as their goods certain personal property of the value of about $700, which, prior to January 10th, 1911, had belonged to Mahoney and Gill as proprietors of a stone-yard conducted by them in Bridgeport, and which on said January 10th they had, by written bill of sale, transferred to the defendant Lewis, but without having recorded a notice of their intention to make such sale, as the plaintiff claims was required by the provisions of chapter 21 of the Public Acts of 1909.

The bond in suit was given by the defendants to procure the release of said attachment.

The plaintiff subsequently obtained judgment against Mahoney and Gill for $714, and afterward, upon their refusal and that of the defendants to pay said judgment, brought this action. The only question involved in this case is whether, upon the facts found, the provisions of chapter 21 of the Public Acts of 1909 are applicable to the sale of January 10th, 1911, by Mahoney and Gill to the defendant Lewis. That Act, which repeals previous statutes upon this subject, reads as follows: "When any person who makes it his business to buy commodities and sell the same in small quantities for the purpose of making a profit, shall, at a single transaction not in the regular course of business, sell, assign, or deliver the whole or a large part of his stock in trade, such sale shall be void as against all persons who are his creditors at the time of such sale, assignment, or delivery, unless he shall, not less than ten days nor more than thirty days previous to such sale, assignment, or delivery, cause to be recorded in the town clerk's office in the town in which such vendor conducts his said business, a notice of his intention to make such sale, assignment, or delivery, which notice shall be in writing, describing in general terms the property to be so sold, assigned, or delivered, and all conditions of such sale, assignment, or delivery, and the parties thereto; and said notice shall be signed by such person or in his name by his attorney."

Concerning the question of the applicability of this statute the trial court has found these further facts: Mahoney and Gill operated a stone-yard, with working benches and tables, grinding wheels, and general tools of the stone-cutters' trade. They bought building stone, in quantity, sawed into slabs of various sizes and shapes, which were delivered to them at their yard in that form. There they cut the slabs into smaller pieces of various shapes and sizes, to agree with orders

given to them to furnish articles of stone to be used in the construction of buildings or their appurtenances. These articles were made to order for particular jobs, and the stone had to be chiseled, tooled, cut, dressed, and polished in accordance with the particular order. They were not used in the identical size and shape that the slabs were in when received. The value of the finished products of the plant was in a large proportion made up of labor and not of material. No change was made in the structure, and the smaller pieces when cut and dressed were easily recognizable as parts of the larger slabs from which they had been cut. They sometimes cut up the stone into sills and similar articles, before receiving orders therefor, and occasionally sold such stone articles to a purchaser who had not previously ordered them, but their regular business was the furnishing stone articles cut and shaped to order.

Prior to and ever since January 10th, 1911, the plaintiff has been a creditor of Mahoney and Gill.

The bill of sale of January 10th described the goods sold as "all cut and uncut stone, tools, traveling crane, building, office furniture, fences, toolshed, and all the property at our stone-yard at. . . ."

The sale was made in good faith, for a valuable consideration, and Lewis took immediate possession of the property sold, and held such possession at the time of the attachment.

The sale was not in the regular course of the business of Mahoney and Gill, and included all their stock in trade.

Upon these facts the trial court held that the statute cited was applicable to said sale, and rendered judgment for the plaintiff for a sum representing only what was found to be the value of the attachable interest of Mahoney and Gill in the stone attached by the plaintiff, with interest thereon.

Manifestly the Act in question does not apply to sales by persons who sell only at wholesale, whether or not they themselves produce, manufacture, or purchase the goods so sold by them, or change the form of the goods or material purchased by them and which form a part of the commodities sold. It is also manifest that the Act does not apply to persons who sell goods at retail, which they have not bought, but which they can fairly be said to have themselves produced or manufactured. The Act in terms applies only to sales of commodities, by persons who make it a business to *buy* and to *sell* in small quantities the commodities which *they have purchased*.

Some difficulties may arise in determining whether the statute applies when an alleged retail dealer substantially changes the form or character of the goods or materials which he has purchased, before he offers them for sale, and also when one sells some goods at retail in connection with another and perhaps much larger business.

The questions which arise in these cases are whether it can rightly be said that the alleged retail dealer is engaged in the business of selling the commodities *which he has bought*, when the articles which he sells are, from his own labor upon them, made materially different in form or character from those which he purchased, and whether one who sells commodities at retail in connection with some other business is, within the meaning of the statute, one who "makes it his business" to sell such commodities in small quantities.

We can lay down no definite rule which will always furnish an answer to these questions. The extent to which the materials purchased are changed by the labor of the purchaser, before they are sold as finished commodities, is always an important element to be considered in determining whether one selling commodities

so changed can properly be said to be one who "makes it his business" to sell, for the purpose of making a profit, *the commodities which he has purchased*. And so, too, the *extent* to which retail sales are made by one, in connection with another business, should be considered in deciding whether the person making such retail sales can fairly be said to be one "who makes it his business" to so sell commodities in small quantities for the purpose of making a profit.

One who purchases metals and wood with which to manufacture and sell sewing-machines at retail, can hardly be said to make it his business to buy such original materials and sell "the same" for the purpose of making a profit upon the commodities which he had bought; nor can a wholesale dealer or manufacturer, because he has occasionally made a sale of goods at retail, properly be said to "make it his business" to sell commodities in small quantities for the purpose of making a profit upon the goods thus sold.

But when the facts, regarding the amount of the labor bestowed by the retail dealer upon the purchased materials or commodities, or regarding the extent of one's sales at retail in connection with another business, differ from the supposed cases just stated, the questions of whether they come within the statute may become more difficult. In such cases each must be determined by its own peculiar facts, rather than by any fixed rule.

In the case at bar these facts appear. The goods which Mahoney and Gill bought of the plaintiffs, and perhaps of others, were stone slabs to be made into stone articles of a certain kind. Mahoney and Gill never sold these stone slabs in the form and condition in which they bought them, but in a form, size, and condition materially changed by their own labor. In the form and condition in which they were purchased by Mahoney and Gill, the stone slabs were evidently not sale-

able in the business in which Mahoney and Gill were engaged. The regular business of Mahoney and Gill was the furnishing, to order, of "stone articles," not of stone slabs. These stone articles were "chiseled, tooled, cut, dressed, and polished in accordance with the particular order." The value of these stone articles so formed was "in a large proportion made up of labor and not of material."

These facts do not bring the case within the statute. We think it cannot fairly be said that Mahoney and Gill made it their business to sell for a profit the stone slabs which they purchased of the plaintiff and others. They were rather engaged in the business of selling for a profit the product of their own labor.

There is error, the judgment of the Court of Common Pleas is reversed and the case remanded with direction to render judgment in favor of the defendants.

In this opinion the other judges concurred.