DETERMINED IN

# THE SUPREME COURT

OF THE

## STATE OF UTAH

(*Continued from Volume 48*)

### SWANSON v. DE VINE, Sheriff.

No. 2941., Decided Nov. 16, 1916 (160 Pac. 872).

1. APPEAL AND ERROR—APPEAL ON JUDGMENT ROLL—EFFECT OF. Where under the findings the court rendered judgment for plaintiff on two theories, the judgment must, on defendant's appeal on the judgment roll without a bill of exceptions, be upheld if either theory was correct. (Page 3.)

2. FRAUDULENT CONVEYANCES—"STOCK OF MERCHANDISE"—BULK SALES—STATUTES—APPLICABILITY. Comp. Laws 1907, Section 2063x, entitled "An act to regulate the purchase, sale, transfer and incumbrance of a stock of goods, wares or merchandise in bulk, * * * otherwise than in the ordinary course of trade," provides that it shall be the duty of every purchaser of a stock of merchandise in bulk to secure from the seller a verified statement as to his creditors to whom five days' notice shall be given by registered mail so that the purchase price may be paid to them, and that every sale not so made shall be fraudulent and void. Plaintiff purchased the business of one engaged in shoe repairing who sold to his customers small quantities of merchandise or materials which he carried for repair purposes consisting of shoe laces, polish, shoe brushes, and inner soles. These sales did not average more than $5 monthly. *Held* that, though the laces, etc., were displayed by the seller in a small showcase, the appliances and goods for repairs did not constitute a stock of merchandise within Bulk Sales Act, and so compliance was unnecessary. (Page 3.)

Appeal from District Court, Second District; *Hon. N. J. Harris*, Judge.

Vol. 49—1

Action by Erick P. Swanson against Thomas A. De Vine, Sheriff of Weber County, Utah.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*A. G. Horn* for appellant.

*A. E. Pratt* for respondent.

STRAUP, C. J.

One Guernsey, in the name of the "Goodyear Shoe Repair Factory," at Ogden City, was, as is alleged and found, the owner and in the possession of repair machinery, tools of trade, leather, and other material and goods used in his business or trade of shoe repairing. As to the character of his business the court found that:

"Shoe repairing was his principal trade or business. He was not a merchant, in the sense that he was engaged in selling merchandise distinct from repairs that he made for his patrons or customers, but would and did on occasions when requested by customers, sell, to the amount of $5 or thereabouts monthly, small quantities of his stock of merchandise or materials which he carried for repair purposes, consisting of shoe laces, polish, shoe brushes, and inner soles, and sometimes pieces of leather, the same, with the exception of leather, being displayed in a showcase, in the window of his place of business."

He sold his business, tools, machinery, and goods to the plaintiff for a valuable and an adequate consideration. Both he and the plaintiff in the negotiations and sale, as found by the court, acted in good faith. But Guernsey at that time was indebted to a leather company of Colorado in the sum of nearly $700 for "merchandise sold." The sale from Guernsey to the plaintiff was made without notice to creditors and was not in compliance with the statute (C. L. 1907, Section 2063x) relating to a sale and purchase of "merchandise in bulk." Upon the theory that the sale was fraudulent and void and upon attachment proceedings in an action brought by the

leather company, all the machinery, tools, and goods sold by Guernsey to the plaintiff were seized by the sheriff and taken into his possession as the property of Guernsey. The plaintiff thereupon brought this action to reclaim them or their value from the sheriff.

Upon the findings the plaintiff was awarded a judgment on the stated conclusions: (1) That the act did not apply to the sale; and (2) that the act was unconstitutional. The defendant appeals on the judgment roll without a bill of exceptions. If either position taken by the court is correct then must the defendant fail. The determination of the one is not dependent upon the other.

We thus look at the first. The title of the act is "An act to regulate the purchase, sale, transfer and incumbrance of a stock of goods, wares, or merchandise, in bulk, or of any portion of the stock, * * * wares and merchandise, otherwise than in the usual course of trade, and prescribing penalties for the violation thereof." The act itself provides:

"It shall be the duty of every person who shall bargain for or purchase any portion of a stock of merchandise, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, or an entire stock of merchandise in bulk"

—before paying the vendor, to demand and receive from him a verified statement as to his creditors to whom five days' notice shall be given by registered mail, and shall pay the purchase money to the creditors or see to it that it is paid to them; and that every sale within the provisions of the statute not so made is declared fraudulent and void. The findings are conclusive. They, in effect, are that Guernsey was not a merchant, but a shoe repairer operating a "shoe repair factory"; that his material or merchandise consisting of shoe laces, polish, brushes, inner soles, and leather carried by him were "for repair purposes," but occasionally sold small quantities of them "to his patrons or customers," when requested. We think it quite clear that the machinery, the motor, the tools, the cash register, and the showcase, etc., were not, within the meaning of the act, "any portion of a stock of merchandise,"

and were not articles or goods which the seller kept for sale. *McKay* v. *Calderwood*, 37 Wash. 194, 79 Pac. 629; *Gallus* v. *Elmer*, 193 Mass. 106, 78 N. E. 772, 8 Ann. Cas. 1067; *Charles J. Off & Co.* v. *Morehead*, 235 Ill. 40, 85 N. E. 264, 126 Am. St. Rep. 184, 20 L. R. A. (N. S.) 167, 14 Ann. Cas. 434. It, however, is especially insisted that the heelplates and cushions, the laces, the spools of thread, the shoe soles and leather, the polish and brushes, etc., were a "portion of a stock of merchandise." But even as to these the finding is that they were "carried for repair purposes" and not for sale as commodities or merchandise. The act, we think, applies only to sales of commodities by persons who make it a business to buy commodities for sale, and who, in the ordinary course of trade, sell them at retail and in small quantities. The findings preclude the conclusion that these articles were purchased, carried, or sold as a stock of merchandise in the ordinary course of trade. That the seller at the request of his customers occasionally sold some of the articles or material to them does not, within the meaning of the act, make them a "portion of a stock of merchandise." As well say that the horseshoes and horseshoe nails carried by a blacksmith in his shop for shoeing horses are a portion of his stock of merchandise if, occasionally, he should sell a few nails or horseshoes to his customers; or that the laces and polish carried by "a bootblack," in the business of shining shoes, are a portion of his stock of merchandise, if, occasionally, he should sell laces and polish to his patrons. The court, in the case of *Conn. Steam Brown Stone Co.* v. *Lewis*, 86 Conn. 386, 85 Atl. 534, 45 L. R. A. (N. S.) 495, said:

"And so, too, the extent to which retail sales are made by one, in connection with another business, should be considered in deciding whether the person making such retail sales can fairly be said to be one 'who makes it his business' to so sell commodities in small quantities for the purpose of making a profit. One who purchases metals and wood with which to manufacture and sell sewing machines at retail, can hardly be said to make it his business to buy such original materials and sell the 'same' for the purpose of making a profit upon the commodities which he has bought; nor can a wholesale dealer or manufacturer, because he has occasionally made a sale of goods at retail, properly be said to 'make it his business' to sell commodities in small quantities for the purpose of making a profit upon the goods thus sold."

We think that applies here. Though the Connecticut statute in phraseology is somewhat dissimilar to ours, yet it has the same central idea or aim to prevent the sale of goods in bulk until the creditors of the seller have been paid. It, however, is urged that section 2063x3 of the statute makes the act applicable to "a trade" or "a business" as well as to a stock of merchandise. It reads:

"Any sale or transfer of any portion of a stock of merchandise otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, or an entire stock of merchandise in bulk, or whenever an interest in or to the business or trade of the vendor is sold or conveyed or attempted to be sold or conveyed, such shall be deemed a sale and transfer in contemplation of this title."

We think the words "trade" and "business" are there used in the sense of a trade in or business relating to merchandise or a stock of goods—carrying on a business or trade in merchandise—and not in the sense of an occupation, handicraft, or a business distinct from merchandise. It is clear such a subject, as is suggested, is not expressed nor implied in the title of the act. Thus, to give it effect, as is contended by the defendant, would render it invalid in such respect. We therefore are of the opinion that the court upon the findings properly held that the statute was not applicable. Reaching that conclusion it is unnecessary to consider the other question as to the invalidity of the statute on the alleged grounds that it is in restraint of trade, class legislation, and is discriminatory.

The judgment of the court below is therefore affirmed, with costs.

FRICK and McCARTY, JJ., concur.