## POTTER v. WALKER.

(District Court, E. D. New York. March, 1924.)

**1. Fraudulent conveyances ⬡47—Bulk Sales Act held not applicable to sale.**

Gen. St. Conn. 1918, § 4749, providing that the sale of all or a large part of the stock in trade of a retail business shall be void as against creditors, unless notice of the intended sale shall previously be filed and recorded in the office of the town clerk, *held* not applicable to a sale made by a retail dealer, not from the stock in his store, but of other merchandise bought in large quantities as a wholesale dealer.

**2. Bankruptcy ⬡178(1)—Sale of merchandise of bankrupt held fraudulent and voidable.**

A sale of new merchandise, purchased and owned by bankrupt corporation, which was largely indebted, by its president, at a place other than its place of business, and not in the usual course of business, for from 60 to 65 per cent. of its wholesale value, *held* fraudulent and voidable by the trustee in bankruptcy of the corporation under Bankruptcy Act, § 67e (Comp. St. § 9651).

**3. Bankruptcy ⬡186(1)—Fraudulent purchaser liable for full value of property transferred.**

In a suit by the trustee of a corporation under Bankruptcy Act, § 67e (Comp. St. § 9651), to recover the value of property sold in fraud of creditors to a purchaser chargeable with notice of the fraud, where the sale was made by the president of the corporation individually, and there was no evidence that bankrupt received the proceeds, the purchaser cannot claim credit for the amount paid, but is liable for the full value.

In Equity. Suit by Mary G. Potter, trustee in bankruptcy of the J. H. Small Shoe Company against Frank Walker. Decree for complainant.

Lesser Brothers, of New York City (William Lesser and Samuel L. Miller, both of New York City, of counsel), for plaintiff.

Jacob J. Lazaroe, of New York City (Arthur C. Mandel, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is an action in equity brought by a trustee in bankruptcy against an auctioneer to set aside a certain transfer of goods made by the bankrupt, through its president, to the defendant on or about September 22, 1922.

In the bill of complaint two causes of action are alleged: The first, that the sale was made in violation of chapter 232, Statutes 1918, § 4749, of the Laws of the State of Connecticut; the second, that the sale and transfer were made by the bankrupt while it was insolvent and unable to pay its debts, and with intent on its part to hinder, delay, and defraud its creditors existing at that time, and to place its property beyond the reach of its creditors, in all of which the defendant knowingly participat-

ed, and that said sale and transfer were in direct violation of the provisions of section 67e of the Bankruptcy Law (Comp. St. § 9651), and were not made in good faith and for a present fair consideration.

The bankrupt was engaged in the retail shoe business at No. 1287 Main street, Bridgeport, Conn. The defendant contends that the bankrupt was also engaged in the wholesale shoe business at what he calls a warehouse, but what in reality was an old barn belonging to Max Cedarbaum, the father-in-law of J. H. Small, the president of the bankrupt, which barn is also located at Bridgeport, Conn., but on another street some distance from the Main street store.

The bankrupt was incorporated on June 24, 1919, and one of the purposes of the corporation as set forth in its certificate was "to buy, sell, and deal in generally shoes of all kinds and descriptions, at wholesale and retail. * * * "

In the Shoe & Leather Mercantile Agency General Rating Book for January and July, 1921, and January, 1922, under the heading "Connecticut, Bridgeport," the name of J. H. Small Shoe Company appears with the address, and "Wholesale boots and shoes," and for July, 1922, "Wholesale and retail boots and shoes." The defendant was not a subscriber of such agency or said rating book. The address given in said rating book for 1921 was 1277 Main street, and for 1922 it was 1285 Main street. The bankrupt had billheads with the address 1287 Main street, Bridgeport, Conn., on which the words "Wholesale Shoes" were printed in red, the type being of good size, easily read. Defendant's son and employee testified that the word "wholesale" appeared on the window of 1287 Main street, but this is denied by J. H. Small, president of the bankrupt.

The business carried on at 1287 Main street was clearly that of a retail and not a wholesale dealer in shoes, and it seems hard to believe that any one could in good faith consider the barn as the place where a wholesale business was conducted. No evidence was offered which in my opinion showed that the bankrupt was actually engaged in the wholesale shoe business at Bridgeport, Conn., but I cannot say that defendant, his son and employee, in the light of their knowledge or the information they had received at the time of the purchase, knew that the bankrupt was not engaged in the wholesale, but was engaged solely in the retail, business.

[1] Chapter 232, Statutes of 1918, § 4749, of the laws of the state of Connecticut, reads as follows: *"Sale of Certain Busi-*

ness. Any person who makes it his business to buy commodities and sell the same in small quantities for the purpose of making a profit, and any person having any interest in any barber shop, dental parlor, restaurant, shoe shining or hat cleaning business, or any fixtures used therein, who intends to sell, assign or deliver, not in the regular course of business, the whole or a large part of the stock in trade or fixtures, or any interest in such barber shop, dental parlor, restaurant, shoe shining or hat cleaning business, or in the fixtures used in connection therewith, shall, not less than fourteen nor more than thirty days prior to such sale, assignment or delivery, cause to be recorded in the town clerk's office in the town where such vendor conducts such business, a notice of his intention to make such sale, assignment or delivery, which notice shall be in writing and shall describe in general terms the property to be sold, assigned or delivered and all conditions of such sale, assignment or delivery, and the parties thereto; and such notice shall be signed by such person or in his name by his attorney. Any sale made in violation of any provision hereof shall be void as against any creditor, provided, this section shall not apply to any sale, assignment or transfer when the instrument by which such sale, assignment or transfer was made has been filed for record at least fourteen days in the town clerk's office of the town in which such business was being conducted."

This statute clearly applies to the sale of a large part of the stock in trade of a retail business and not to the sale of the stock in trade of a wholesale business, and therefore it cannot apply in the instant case because no part of the stock in trade of the retail business was sold and transferred but only part of the stock in trade purchased by the bankrupt in large quantities, under the guise, at least, of being in the wholesale business.

Connecticut Steam Brown Stone Co. v. Lewis, 86 Conn. 386, 85 A. 534, 45 L. R. A. (N. S.) 495, cited by plaintiff, does not in my opinion sustain the plaintiff's contention, because as I read that decision the court holds that the facts in each case must govern, and under the facts in this case I cannot hold the sale to be void simply by reason of the failure to file the 14-day notice provided in said Connecticut statute, supra.

[2] The second cause of action is based upon fraud, and it is immaterial whether the goods were purchased in large or small quantities.

The facts with reference to the sale sought to be set aside are as follows:

The J. H. Small Shoe Company, the bankrupt, was engaged in the retail shoe business at 1287 Main street, Bridgeport, Conn., and also had a large quantity of new shoes, many of which were in the cases in which they had been shipped from the manufacturers or dealers to the bankrupt within 2 months prior to the sale to defendant, which shoes were stored in a barn belonging to the father-in-law of J. H. Small, the president of the bankrupt, located at 75 James street, Bridgeport, Conn., some distance from the bankrupt's store.

The bankrupt through J. H. Small, its president, who owned all but two shares of its capital stock, had been buying in large quantities for a short time before the date on which the sale in question took place. The bankrupt was not engaged in business as a wholesale dealer, although it advertised as such.

In February, 1921, J. H. Small had made a sale to D. Koch, an auctioneer, who paid by check drawn to his order by the defendant, and some time shortly before the sale the bankrupt had made a sale to the same auctioneer named Koch, who was friendly to the defendant. The defendant was an auctioneer and J. H. Small called at the defendant's place of business a day or two before September 12, 1922, about making a sale of some merchandise, and saw William Walker.

On September 12, 1922, William Walker, the son of the defendant, who was associated with his father in business, with the approval of the defendant, went with Sol Dunn, an employee of the defendant, to the retail store of the bankrupt at Bridgeport, arriving in the morning, and they were taken by said J. H. Small to the barn which they call a warehouse, where the said Walker and Dunn looked over the shoes that were offered, making a list, putting an arbitrary price on the same, and paying no attention to the makes or the wholesale values, after which said Walker and Dunn went over the list and made up the total they were willing to pay, which list has been lost or destroyed.

The said J. H. Small demanded $8,000, and Walker offered $5,500, and J. H. Small finally accepted the same, although the value of the said shoes was at least $8,500.

Walker and Dunn made no inquiries why said Small desired to sell new shoes, some of which were unpacked, at the prices they offered, nor did they make any inquiry as to the financial condition of the J. H. Small

Shoe Company, but closed the bargain, and paid $50 in cash on account, and agreed to pay the balance in a certified check and remove the goods the next day, whereupon the said Small gave said Walker a receipt, of which the following is a copy (the words "Paid by check. Joseph H. Small" being added on the 13th day of September, 1922, when said check was delivered):

"Amount of pairs 2,366. Total.

"Received $50 deposit on shoe stock comprising of 66 cases, 27 Pea Boxes of ladies, mens, boys La. Gts. & Chd. shoes bought from Mr. Small on premises of 75 James St., Bridgeport, Conn. This stock to be free and clear of all kind and nature.

| | |
|---|---|
| Stock | $5500.00 |
| Deposit | 50.00 |
| Balance | $5450.00 |

"To be paid to Mr. Small by check (certified)."

The said Walker and Dunn then returned to New York. On the 13th said Walker and Dunn returned to Bridgeport, met Small at the retail store, and then all three went to said barn, where they loaded said shoes on a truck, gave the certified check to Small for $5,450, and took said goods to New York.

The certified check for $5,450 was drawn by the defendant to the order of William L. Walker, and indorsed by him in blank, and was never indorsed by said J. H. Small or the bankrupt, but by some person to whom Small delivered the same. J. H. Small did not remember what part of the proceeds of the said sale went to pay any of the creditors of the bankrupt. The high quality and character of the shoes is shown by the advertisement of their sale issued by the defendant. The sale made to the defendant as aforesaid made the said J. H. Small Shoe Company insolvent, and the sale made by the bankrupt to the defendant in New York 16 days later added the finishing touch, resulting in the bankruptcy of said company; an involuntary petition being filed on October 7, 1922.

The sale on September 29th did not take place within the jurisdiction of this court, and I can do nothing with reference to it except to consider it in relation to the sale in question in determining whether the defendant was a purchaser in good faith without notice on September 12th, or was engaged with Small, or had notice that Small was engaged in perpetrating a fraud on the creditors of the bankrupt on September 13th. The liabilities of the bankrupt as shown by its schedules were $37,049.05. On

September 12, 1922, the bankrupt was indebted for merchandise in the sum of $18,-903.29. After the bankruptcy the merchandise of the bankrupt which was left sold for about $3,000. The defendant, although present through all the trial, did not take the stand.

Section 67e of the Bankruptcy Act, on which plaintiff relies, reads as follows: "That all conveyances, transfers, assignments, or incumbrances of his property or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. * * * "

The sale was not made in the ordinary course of business at a regularly established place of business, but at a barn which by courtesy was called a warehouse. The sale and removal of the goods, it is true, were made in the daytime but the sale was made in a hurry.

The method of arriving at the value of the goods was unusual because the defendant's witnesses who attended to the valuing of the goods say that they paid no attention to the make or wholesale value in fixing the price they would give but simply put an arbitrary price on the shoes per pair.

The shoes sold were new shoes, not shopworn, and most of them in the very boxes in which they came from the manufacturers but a short time prior thereto, and were sold at a price far below the wholesale value.

Payment was not made by a check drawn to the order of the corporation or indorsed to its order, the first payment of $50 having been made in cash, and the balance of $5,450 by a certified check drawn to the order of the son of defendant and by him indorsed in blank; by which action of the defendant J. H. Small individually was given the opportunity to obtain the whole sum. All of these facts show that the sale was not made

in the ordinary course of business, and the purchaser was placed on notice. Walbrun v. Babbitt, 83 U. S. 577, 21 L. Ed. 489; Dokken v. Page (C. C. A. 8th Cir.) 17 Am. Bankr. Rep. 228, 147 F. 438, 77 C. C. A. 674.

Neither the name of the corporation nor of J. H. Small, the president of the corporation with whom the agents of the defendant dealt, appears as an indorser on said check, nor does it appear that any part of the amount paid by the defendant went into the possession of the corporation.

No list of the shoes purchased was retained by the defendant, the only description contained in the receipt given to defendant's agent being "66 Cases of Pea Boxes of Ladies, Mens, Boys, La. Gts. and Chd. Shoes bought from Mr. Small on premises of 75 James St. Bridgeport, Conn."; at the top being the words, "amount of pairs 2,366 total."

The fact that the agents of the defendant realized that the purchase and sale was not in the ordinary course of business is shown by the receipt, in which it is stated: "This stock to be free and clear," and then there was added after the balance of the receipt was written, with a different pencil and in what appears to be a different hand, the words "of all kind and nature."

This receipt was made out by the defendant's agents, the choice of the words was theirs, and the purpose of such words by the defendant, his agents, or servants in such receipt is clear, because his son says they were used by them generally because he was afraid he might slip sometimes. This of itself placed the defendant on notice. Bentley v. Young (D. C. N. Y.), 31 Am. Bankr. Rep. 506, 210 F. 202, affirmed in 34 Am. Bankr. Rep. 365, 223 F. 536, 139 C. C. A. 126.

The sale was not made at the place of business of the bankrupt shown on the receipt but at the barn, and this was sufficient to put the defendant, his servants, or agents on notice.

The defendant was an auctioneer of long standing, his son and employee were men of some experience, trusted by the defendant to make a purchase on his account in a sum of over $5,000, and therefore they were put on notice by the way in which the transaction was conducted, and notice to them was notice to the defendant. In the face of the manner in which the sale was conducted I do not see how the agents of the defendant could have thought that it was a sale fairly made in the regular course of business, nor do I believe that the evidence warrants any

such belief. The counsel for the defendant attempts to justify the sale on the ground that every one has a right to purchase as cheaply as possible, and that is true so long as the purchase is made in good faith in the regular course of business.

In the instant case I can see no evidence of good faith; on the contrary, the defendant, his agents, and servants appear to have joined with the president of the bankrupt, Joseph H. Small, in a successful effort to obtain the property of the bankrupt without paying to the bankrupt anything like the value thereof and in fraud of the rights of all the creditors of the bankrupt.

If the defendant claimed lack of knowledge as to the conditions under which the sale was made or lack of notice, he should have taken the stand and denied such knowledge, but, notwithstanding the fact that he was present during the whole trial, he did not take the stand. Wylde v. Northern R. R. Co., 53. N. Y. 164; Moore on Fraudulent Conveyances, vol. 1, § 10.

The defendant's counsel in his brief concedes that the bankrupt and J. H. Small acted in fraud of the creditors, but claims that the defendant was a purchaser without notice for a present fair consideration. With this I cannot agree, because the defendant did not give a present fair consideration, and did not act in good faith without notice, but on the contrary bought new goods for from 60 to 65 per cent. of their wholesale value, and made no effort to ascertain the indebtedness of the defendant, although the son and employee of the defendant exhibited their apprehension that all was not right by the very self-assuring terms they incorporated in the receipt. These were badges of fraud. Bentley v. Young, supra.

The indebtedness of the bankrupt was large, and by the sale and transfer in question to the defendant the bankrupt appears to have been made insolvent, and this the defendant, his agents, and servants would have ascertained had he or they made the slightest inquiry of any of the creditors whose names appeared on the boxes of shoes he obtained from the bankrupt.

Substantially all of the large quantity of shoes purchased by the bankrupt on credit within 2 months before the involuntary petition was filed, together with other shoes, were obtained from the bankrupt by the defendant and another auctioneer by the name of D. Koch, who was at least friendly to the defendant if he had no other relation to him, and, so far as the shoes described in the instant suit are concerned, such ac-

quisition by the defendant was at a price far below their wholesale value, which must have been known to defendant.

Of course I cannot pass on the legality of the subsequent sale of the stock in trade of the bankrupt to the defendant in the New York place of business on September 28, 1922, but it is apparent that the sale by the bankrupt to the defendant in September, 1922, rendered the J. H. Small Shoe Company bankrupt and hopelessly insolvent.

The bankrupt and the defendant having kept no copy of the list or record from which styles and make could be gleaned, it is somewhat difficult to determine the value of the shoes alleged to have been purchased and taken by the defendant, but there can be no doubt that they were reasonably worth at least $8,500, and that is the amount which the defendant should repay the plaintiff, the trustee of the above-entitled estate, with interest from September 12, 1922, with costs.

[3] The defendant can claim no allowance by reason of the $5,500 paid by him, but is liable to the plaintiff for the full value of the stock in trade obtained by him from said bankrupt at Bridgeport, Conn., on September 12, 1922, and removed on September 13, 1922. Bentley v. Young, supra.

A decree may be entered in accordance with this opinion.