A. H. BENTON
*vs.*
FREDERICK SCHATSCHNEIDER ET ALS.

ERNEST CLARK
*vs.*
FREDERICK SCHATSCHNEIDER ET ALS.

JOHN KOCARNIK
*vs.*
FREDERICK SCHATSCHNEIDER ET ALS.

GEORGE REISKE
*vs.*
FREDERICK SCHATSCHNEIDER ET ALS.

Court of Common Pleas    Hartford County    File Nos. 41559, 41560, 41561, 41562

MEMORANDUM FILED FEBRUARY 16, 1942.

*Charles Stroh,* of Hartford, for the Plaintiffs.

*Benjamin Rabinovitz,* of Hartford, and *George C. Lessner,* of Manchester, for the Defendants.

MOLLOY, J. The complaint is in two counts. It is alleged, according to the allegations of the first count, that the plaintiff is a milk producer and that the defendant, Frederick Schatschneider, was the owner of and operated a milk route; that on and prior to October 11, 1941, Schatschneider purchased from the plaintiff his entire milk supply on credit, finally becoming indebted to the plaintiff in the sum of $530.39 for milk purchased, which sum remains unpaid; and that on November 14, 1941, Schatschneider sold and transferred "said milk route and the good will thereof to the defendant, Jack Bayer, for a valuable sum in dollars", but that no bill of sale nor any instrument in writing evidencing an intention to sell was recorded with the town clerk's office of the Town of Manchester where Schatschneider resided.

The second count alleges, in short, that the defendant Bayer, knowing of Schatschneider's indebtedness to the plaintiff, in collusion with said Schatschneider and his wife, Bertha Schatschneider, and with intent to aid Frederick Schatschneider to avoid the payment of his debt to the plaintiff, acquired ownership of the milk route by bill of sale dated November 14, 1941; that as part of the consideration it was agreed between the defendants that Frederick Schatschneider would work for Bayer as a solicitor and driver on the milk route conveyed for a period of one year; and that in further collusion said Bayer issued checks to Bertha Schatschneider and a promissory note totaling $700, all for the purpose of placing the assets of the defendant Frederick Schatschneider beyond the reach of creditors, with the result that the plaintiff was damaged. In other words, the second count alleges that a fraud has been perpetrated on the plaintiff.

This complaint is demurred to by the defendant, Jack Bayer, on the grounds that no bill of sale nor any instrument in writing evidencing an intention to sell a milk route is required by law; and the plaintiff "was not deprived of any right by the alleged acts of the defendant, Jack Bayer, nor has he been prejudiced or damaged by said alleged acts."

The first ground of demurrer brings squarely before us the question of whether or not section 4703 of the General Statutes, Revision of 1930, as amended by section 1575c of the 1935 Cumulative Supplement to the General Statutes, applies to this sale. The statute in its pertinent parts provides that: "Any person who shall make it his business to buy commodities and

sell the same in small quantities for the purpose of making a profit. . . . who intends to sell, assign or deliver, not in the regular course of business, the whole or a large part of the *stock in trade or fixtures*, . . . . shall, not less than fourteen days nor more than thirty days prior to such sale, assignment or delivery, cause to be recorded in the town clerk's office in the town where such vendor conducts such business, a notice of his intention to make such sale, assignment or delivery", except that the statute shall not apply to such "sale, assignment or transfer when the instrument by which such sale, assignment or transfer was made has been filed for record at least fourteen days in the town clerk's office of the town in which such business was being conducted." (Italics added.)

"The general purpose of this statute from its inception has been to protect creditors from prejudice through transfers of the ownership of retail businesses and similar establishments without notice to or knowledge of creditors." *Dubin vs. Woolfson,* 117 Conn. 143, 146.

"The Act in terms applies only to sales of commodities, by persons who make it a business to *buy* and to *sell* in small quantities the commodities which *they have purchased." Conn. Steam Brown Stone Co. vs. Lewis,* 86 Conn. 386, 390.

"A large majority of the United States have enacted. . . . statutes having for their object a limitation of the practice by dealers of selling all, or substantially all, of their *merchandise at once,* since frauds upon creditors have frequently been committed by a dealer making such a sale and departing with the consideration received without paying his creditors. . . . their general purport is that a sale by a dealer *of his merchandise in bulk* is presumed to be fraudulent in the absence of certain formalities." (Italics added.) 2 *Williston, Sales* (2nd ed. 1924) §643.

Any sale made in violation of any provision of the statute shall be void as against any creditor. The statute being of a penal character and in derogation of the right to alienate property without restrictions should be strictly construed. Yet the statute shall be applied with a view to curing the evils to which it was directed. 27 *C.J. Fraudulent Conveyances* §883.

The second paragraph of the complaint alleges that the plaintiff sold his milk to the defendant Frederick Schatschneider relying upon the latter's ownership of the milk route and equip-

ment for the extension of credit to him; while the fourth para-graph thereof says that what was sold was the "milk route and good will thereof." No mention is made of the sale of equipment, which cannot be assumed as far as this demurrer is concerned.

In *Larson vs. Judd*, 200 Ill. App. 420, it was held that cattle, horses and tools used by a dairyman selling milk at retail were goods and chattels within the meaning of the Illinois bulk sales act, where there was a sale, transfer or assignment in bulk "of a stock of merchandise, or merchandise and fixtures, or other goods and chattels of the vendor's business."

Undoubtedly the plaintiff's reliance is mainly upon the language of our Act, which says that "Any person who shall make it his business to buy commodities and sell the same in small quantities" shall follow the provisions of the Act. The fact that he buys commodities and sells the same in small quan-tities is not the sole determinative factor. The Act says further that when such a person—that is, one who buys commodities and sells the same in small quantities—shall sell, assign or de-liver not in the regular course of business the whole or a large part of the "stock in trade or fixtures" and does not com-ply with the Act, the sale shall be void. The object, according to *Williston on Sales*, as quoted above, is to prevent the selling of all or substantially all of a person's merchandise or fixtures at once.

Now, while the milk dealer in question bought his milk in bulk to sell it in small quantities over his route, he did this every day. That is, he bought his commodity, the entire milk supply of the plaintiff, and the next day sold all of it in small quantities. There was no bulk of merchandise or stock in trade left which could be retained by the dealer, and thus afford a protection to the creditor against any sale of the merchandise or stock in trade in bulk not in the regular course of business. The Act is to prevent one who in the nature of his business has to have a supply or stock of merchandise on hand from disposing of it in one sale not in the regular course of business. The maintenance of that stock of merchandise is the protection, in part at least, to the retail dealer's creditors. That situation cannot apply in the case of the milk dealer. Certainly it does not apply to a milk route, defined by Webster as "the course or way which is passed or traveled" and made up of customers.

When the dealer sells the milk route, what he sells is the

good will of the people on the route who have been accustomed to buying from him, and who by reason of that fact will continue to buy from the person who has purchased the route. "Stock in trade or fixtures" must be construed as intending personal property and not as intending something intangible or the names of human beings.

Now, it may be that the use of the word "fixtures" in the Act may bring a sale by a milk dealer within its provisions because the dealer undoubtedly had equipment which he used in the operation of his business and, being a man who bought commodities and sold in small quantities, it is possible that this equipment would come within the meaning of the word "fixtures." But the complaint alleges, as stated above, that what was sold and transferred was a "milk route and the good will thereof." So as the complaint stands certainly the Act does not apply for the reasons stated above.

While the second count of the complaint refers also to the fact that no bill of sale has been executed and recorded, the main reliance of this count is upon the collusion and conspiracy entered into between the defendant Frederick Schatschneider and his wife, Bertha Schatschneider, and the purchaser, Jack Bayer, in that they perpetrated a fraud in so concealing the consideration of the purchase as to prevent creditors from reaching it. It would seem, therefore, that the disposal of the merits of this count should not be so summary as in a ruling upon a demurrer. It is better to have a hearing on the facts as concerns the second count and then determine what merit there is in the second count, and what rights and remedies accrue under the facts.

The demurrer is, therefore, sustained as to the first count and overruled as to the second count.